PITTSFIELD CHARTER TOWNSHIP v WASHTENAW COUNTY

Docket No. 219480. Submitted February 6, 2001, at Lansing. Decided June 15, 2001, at 9:00 A.M. Leave to appeal sought.

Pittsfield Charter Township brought an action in the Washtenaw Circuit Court against Washtenaw County and the city of Ann Arbor, seeking a declaration that the county is subject to the township's zoning regulations with regard to the defendants' proposed construction of a homeless shelter on county-owned land located in the township. The land is zoned by the township for industrial use and the zoning expressly excludes residential uses such as homeless shelters. The court, David S. Swartz, J., granted summary disposition in favor of the defendants, finding that under the statute regarding the powers of a county board of commissioners, MCL 46.11, the Legislature intended to grant counties plenary authority to choose sites for buildings and that the county is exempt from the township's zoning ordinances. The township appealed.

The Court of Appeals held:

1. The broad grant of authority in MCL 46.11 to counties to site and use property for county purposes does not mean that a county may do so in derogation of any and all laws, including local zoning laws. The statute does not grant plenary power to the county or exempt it from the township's zoning regulations.

2. The legislative scheme for land planning and zoning for counties and townships provides an interrelationship between a county and a township that strongly suggests that counties are subject to township zoning regulations. The statutes express no clear legislative intent to exempt a county from a township's zoning regulations for such purposes as selecting a site for a homeless shelter.

3. The broad, nonexclusive powers conferred on county boards under MCL 46.11 do not override the comprehensive statutory scheme that incorporates both the county's and the township's authority in regulating land use within their borders.

Reversed and remanded.

ZONING — COUNTIES — TOWNSHIPS.

The broad powers granted by the Legislature to a county board of commissioners to site and use property for county purposes do not

allow a county to do so in derogation of any and all laws, including local zoning laws (MCL 46.11).

*Reading & Etter* (by *John L. Etter* and *Mark A. Reading*), for Pittsfield Charter Township.

*Curtis N. Hedger*, Corporation Counsel and *Bodman, Longley & Dahling, LLP* (by *Jerold Lax*), for Washtenaw County.

Office of the City Attorney (by *Kristen D. Larcom*, Assistant City Attorney), for the city of Ann Arbor.

Amicus Curiae:

*Bauckham, Sparks, Rolfe, Lohrstorfer & Thall, P.C.* (by *John H. Bauckham* and *Robert E. Thall*), for Michigan Townships Association.

Before: HOLBROOK, JR., P.J., and MCDONALD and SAAD, JJ.

SAAD, J.

### I. NATURE OF THE CASE

This controversy presents a much-litigated but difficult question[1] of statutory interpretation: When is a governmental unit exempt from or subject to local zoning regulations? Here, Washtenaw County says that it has the statutory, plenary power to use its property, located in the county (and in Pittsfield Charter Township within the county), as it determines, immune from township zoning laws. For its part, the township says that it has comprehensive statutory power to regulate land use within its juris-

---

[1] See generally, anno: *Applicability of zoning regulations to governmental projects or activities*, 53 ALR5th 1.

diction and, therefore, the county's use of its property within the township is subject to the township's zoning laws. The township argues that the county may not use county property for a homeless shelter in an area that the township has zoned as industrial and that specifically excludes residential and homeless shelters. Instead, the township contends that the county must site the homeless shelter it desires in an area of the township zoned for residential and homeless shelters.[2] The county counters that it may use its property for a homeless shelter wherever it chooses, irrespective of the township's zoning restrictions, because MCL 46.11 grants it broad powers to site and use its property. These diametrically opposed views of these two governmental units raise this specific legal issue of first impression: Is a county's right to use its property subject to or exempt from a township's zoning laws? Our Supreme Court has said in *Dearden v Detroit*[3] and *Burt Twp v Dep't of Natural Resources*,[4] and most recently in *Byrne v Michigan*,[5] that "the legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances."[6]

---

[2] The county did not seek a variance, nor has it made any claim of exclusionary zoning and, therefore, the trial court did not and we will not address such issues. We note only that our decision today leaves open such questions for later determination if such claims are made in a timely fashion.

[3] *Dearden v Detroit*, 403 Mich 257, 264; 269 NW2d 139 (1978).

[4] *Burt Twp v Dep't of Natural Resources*, 459 Mich 659, 663; 593 NW2d 534 (1999).

[5] *Byrne v Michigan*, 463 Mich 652; 624 NW2d 906 (2001).

[6] The basic rules of statutory interpretation are set forth in *Kent v Alpine Valley Ski Area, Inc*, 240 Mich App 731; 613 NW2d 383 (2000), which provides:

Here, we confront this close legal question by analyzing numerous statutes that have some bearing on, but do not answer, the precise legal issue before us. For reasons that we analyze in more detail below, we hold that the relevant statutes compel the conclusion that Washtenaw County is subject to Pittsfield Township's zoning ordinances.

## II. FACTS AND PROCEEDINGS BELOW

The parties do not dispute the essential facts in this case, which involves Washtenaw County's proposed placement of a homeless shelter on county-owned land located in Pittsfield Township. The land on which the county wishes to place the shelter is zoned by the township for industrial use, which excludes residential uses such as homeless shelters. Pittsfield Township notified the Washtenaw County administrator that the county must abide by the township's zoning ordinances. Washtenaw County disagreed and asserted that its use of the property for a homeless shelter is not subject to township zoning regulations.

Pittsfield Township filed this declaratory judgment action, seeking a determination whether Washtenaw County must comply with Pittsfield Township's zoning ordinances. In lieu of answering, Washtenaw County moved for summary disposition under MCR

---

A fundamental rule of statutory construction is to ascertain the purpose and intent of the Legislature in enacting the provision. Statutory language should be construed reasonably and the purpose of the statute should be kept in mind. The first criterion in determining intent is the specific language of the statute. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted and courts must apply the statute as written. [*Id.* at 736 (citations omitted).]

2.116(C)(8).[7] Following oral argument, the trial court granted summary disposition to Washtenaw County. The trial court ruled that the Legislature intended to grant counties plenary authority to choose sites for buildings under the statute regarding the powers of a county board of commissioners, MCL 46.11, and that the county, therefore, is exempt from Pittsfield Township's zoning ordinances. Thereafter, the trial court denied Pittsfield Township's motion for reconsideration and dismissed the case. Pittsfield Township appeals as of right, and we reverse.

### III. ANALYSIS[8]

Because our Supreme Court says we are to decide this controversy by determining legislative intent,[9] a task difficult under the best of circumstances, our job here is particularly complex because there is no legis-

---

[7] The city of Ann Arbor planned to jointly finance the homeless shelter and, therefore, Pittsfield Township also named Ann Arbor as a defendant in this action. Ann Arbor joined Washtenaw County's motion for summary disposition and essentially adopted Washtenaw County's arguments on appeal regarding the county's plenary authority to choose a location for the shelter. Accordingly, and for ease of reference, we refer only to Washtenaw County throughout this opinion.

[8] The county and the township rely on zoning and land-use enabling statutes, raising a question of statutory interpretation that we review de novo as a question of law. *Capital Region Airport Authority v DeWitt Charter Twp*, 236 Mich App 576, 581; 601 NW2d 141 (1999). We also review de novo a trial court's order regarding a motion for summary disposition under MCR 2.116(C)(8). *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

[9] We regard the term "legislative intent" generically, thus requiring us to give meaning to the legislation which the Legislature gave to the statute by the words used. So, for example, if the Legislature was quite clear in its meaning in the legislation such that no interpretation is necessary, we would simply apply the words as given without divining unstated "legislative intent."

lative pronouncement strictly on point. That is, the Legislature has not promulgated a rule that says that a county is subject to or exempt from township zoning laws (or other laws for that matter). In some areas, our Legislature has spoken directly and clearly on the subject whether certain specific state agencies are subject to or exempt from zoning ordinances, but not here.[10]

Accordingly, we make what we regard as the only reasonable inquiry: What do the land planning and zoning statutes relating to counties and townships say and, specifically, what do the statutes say regarding the county's right to site and use its property?

Before we examine the comprehensive planning and zoning legislation relevant to counties and townships, we will review the legislation that the county alleges gives it plenary power to be exempt from the township's zoning laws.

### A. GENERAL POWERS GRANTED TO THE COUNTY BOARD OF COMMISSIONERS

As part of the comprehensive legislation dealing with counties, § 11[11] enumerates the broad powers granted by the Legislature to the county boards, and those subsections relevant to our inquiry provide that a county board of commissioners may

---

[10] For example, in *Byrne,* which we discuss *infra,* the Legislature specifically granted the State Police the broad authority to construct the Michigan Public Safety Communications System (MPSCS), thus exempting the State Police from local zoning ordinances. *Byrne, supra.* While granting that broad authority, however, the Legislature also addressed the site selection process and the role of the local zoning boards in handling potential conflicts with local zoning laws.

[11] MCL 46.11.

(b) Determine the site of, remove, or designate a new site for a county building. The exercise of the authority granted by this subdivision is subject to any requirement of law that the building be located at the county seat.

*     *     *

(d) Erect the necessary buildings for jails, clerks' offices, and other county buildings, and prescribe the time and manner of erecting them.

We are not persuaded that this grant of authority to site and use property for county purposes means that a county may do so in derogation of any and all laws, including local zoning laws. If the Legislature meant to say that the county's power to site and use its property is plenary (not subject to, but exempt from, any legal restrictions), the Legislature could have easily and expressly said so. It did not, and we conclude that it is neither permissible nor appropriate for us to graft such a plenary gloss on this statutory provision.

Indeed, our courts have historically been reluctant to read into a legislative grant of authority exclusive power in derogation of other laws or governmental authority.

For example, in *Cody Park Ass'n v Royal Oak School Dist*,[12] in which a school district claimed exemption from a city zoning ordinance, relying on the now-repealed School Code of 1976, this Court found no Legislative intent that school districts have exclusive authority and not be subject to zoning ordinances:

---

[12] *Cody Park Ass'n v Royal Oak School Dist*, 116 Mich App 103, 108; 321 NW2d 855 (1982), superseded by statute as stated in *Burt Twp, supra* at 664, n 3.

The mere fact that the Legislature has specified the designated decision-making authority for such purposes cannot be extended to support an interpretation that such authority is exclusive and thus not subject to local zoning ordinances.

Also, in *Burt Twp, supra,* involving the authority of the Department of Natural Resources to build public access docks, our Supreme Court said:[13]

The DNR places great emphasis on the mandatory nature of the duties expressed in the [Natural Resources and Environmental Protection Act, MCL 324.101 *et seq.*], as evidenced by the Legislature's repeated use of the term "shall," as well as the fact that the DNR is given the "power and jurisdiction" to manage and control lands under the public domain. However, we are not persuaded that the Legislature, in directing that the DNR engage in certain governmental functions, intended that the DNR be authorized to do so in any manner it chooses. According the DNR "power and jurisdiction" to manage land within its control is not the same as granting it exclusive jurisdiction. Thus, the fact that the DNR is mandated to create recreational facilities on public land it manages and controls does not indicate a legislative intent that the DNR may do so in contravention of local zoning ordinances.

Finally, in *Capital Region Airport Authority v DeWitt Charter Twp*[14], our Court considered whether the Capital Region Airport Authority (CRAA), a state agency that operated a city airport, is exempt from local zoning ordinances to allow development of a business park on airport grounds. This Court opined:

---

[13] 459 Mich 699-670.

[14] *Capital Region Airport Authority v DeWitt Charter Twp,* 236 Mich App 576, 592-593; 601 NW2d 141 (1999).

We find that neither of these provisions[15] expresses a legislative intent that the CRAA have exclusive authority over the acquisition, development, sale, or lease of airport land in conjunction with nonaeronautical uses. Section 101 speaks only of land related to aeronautical functions. Although § 105 authorizes the CRAA to lease airport property for nonaeronautical purposes, we find no statutory language evincing a legislative intent for the CRAA to have exclusive jurisdiction over these leases and developments. Section 105 merely authorizes the CRAA to engage in this activity, which is not sufficient to immunize the CRAA from local regulation. In *Burt Twp*, the Supreme Court was "not persuaded that the Legislature, in directing that the DNR engage in certain governmental functions, intended that the DNR be authorized to do so in any manner it chooses." Analogously, we are not persuaded that the Legislature intended for the CRAA to have authority to lease airport land in contravention of local zoning. Accordingly, we find no legislative intent to exempt the CRAA from local land-use ordinances with respect to lease or development of land for nonaeronautical functions. [Citations omitted.]

Clearly, when the Legislature desires to grant exclusive jurisdiction to a governmental unit in a particular field, it knows how to do so and has done so. In *Byrne*, for example, the Supreme Court opined that, with regard to the selection of sites for State Police radio towers, the Legislature specifically provided that the State Police shall choose a site and, if the site does not comply with local zoning ordinances, the local unit has thirty days in which to grant a special use permit or propose an equivalent site. *Byrne*, *supra*, citing MCL 28.282(2). In affirming this Court's decision,[16] the Supreme Court stated in

---

[15] MCL 259.101 and 259.105(a), (e).

[16] *Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563; 609 NW2d 593 (2000).

*Byrne*:[17]

> There can be no doubt of the correctness of the Court of Appeals statement that "[t]he clear import of the Legislature's enactment of 1996 PA 538, which by its terms grants the State Police responsibility for all matters concerning construction of the new MPSCS, was to exempt the State Police from local zoning ordinances so that the MPSCS could effectively and efficiently be constructed." 239 Mich App 574.
>
> As the Court of Appeals further observed, the Legislature recognized, in the second sentence of MCL 28.282(2); MSA 4.492(2), that the State Police might select a site that is incompatible with a local zoning ordinance. The Legislature dealt directly with that possibility, requiring notification, and giving the local unit of government the alternatives of timely issuing a special use permit or proposing an equivalent site. Finally, the Legislature specified the outcome if the local unit and the State Police cannot resolve the situation, authorizing the State Police to "proceed with construction" if the local unit neither issues a timely special use permit nor proposes an alternative that meets the siting requirements.

Also, as we noted in *Capital Region Airport Authority, supra,* in connection with the power to make decisions about aeronautical uses at an airport, the Legislature gave the CRAA exclusive authority in clear language. Specifically, in finding that the CRAA "enjoys exclusive authority over aeronautical functions,"[18] this Court[19] quoted from § 1 of the Aeronautics Code:[20]

---

[17]  463 Mich 660-661.

[18]  236 Mich App 593.

[19]  *Id.* at 590.

[20]  MCL 259.1.

"It is hereby declared that the purpose of this act is to further the public interest and aeronautical progress by providing for the protection and promotion of safety in aeronautics; by cooperating in effecting a uniformity of the laws relating to the development and regulation of aeronautics in the several states; by revising existing statutes relative to the development and regulation of aeronautics *so as to grant to a state agency such power and impose upon it such duties that the state may properly perform its functions relative to aeronautics and effectively exercise its jurisdiction over persons and property within such jurisdiction, may develop a statewide system of airports, may cooperate with and assist the political subdivisions of this state and others engaged in aeronautics, and may encourage and develop aeronautics* . . . ." [Emphasis added.]

We observed that, "[a]lthough phrases such as 'exclusive jurisdiction' do not appear in this provision, nonetheless, this provision demonstrates a legislative intent to endow the state agency . . . with exclusive jurisdiction over aeronautical activities on airport property."[21]

Here, we do not read the statute the county relies on as granting exclusive authority to the county to use its property in derogation of all laws, including zoning laws. Rather, we read this statute as our courts in *Burt Twp*, *Cody Park*, and *Capital Region Airport Authority* read the relevant statutes there, as *not* granting plenary power to the affected governmental unit.

---

[21] *Capital Region Airport Authority, supra*, 236 Mich App 590-591. In finding that the CRAA does not have exclusive authority over nonaeronautical functions, this Court, *id.* at 594, relied on subsection 1(1) of the Township Zoning Act, MCL 125.271(1), which "enables the township to plan development and regulate land use in furtherance of the public interest."

Of course, our conclusion regarding this statutory provision does not end our inquiry or answer the ultimate question whether the county's proposed use is subject to the township's zoning regulation. In order to answer this question, we now turn to those specific, interrelated statutes that control land planning and land use for counties and townships.

### B. LEGISLATIVE SCHEME FOR LAND PLANNING AND ZONING FOR COUNTIES AND TOWNSHIPS

Regarding planning and zoning for land use, the Legislature provided for the interrelationship between a county and its townships in a way that strongly suggests that counties are subject to township zoning regulations.

The Township Zoning Act gives a township broad authority to define the use for each district within the township and, importantly for our holding, the Township Zoning Act states that its provisions take precedence over provisions of other ordinances. MCL 125.298. Similarly, and equally important, the County Zoning Act states that a township's zoning provisions are not subject to the county's zoning provisions. MCL 125.239.

Moreover, read together, the Township Zoning Act and the County Zoning Act, along with the Township Planning Act, MCL 125.321 *et seq.*, provide a comprehensive statutory scheme that can be harmonized[22] with the enumerated powers granted to counties by MCL 46.11. Under the Township Zoning Act, a town-

---

[22] If two statutes lend themselves to a construction that avoids conflict, that construction should control. *House Speaker v State Administrative Bd*, 441 Mich 547, 568-569; 495 NW2d 539 (1993).

ship zoning board "shall submit the proposed zoning ordinance including any zoning maps to the county zoning commission of the county in which the township is situated for review and recommendation . . . ." MCL 125.280. The Township Planning Act also requires a township to submit its zoning plan to the county for its approval. MCL 125.328. Further, the Township Planning Act requires a township planning commission to "consult, in respect to its planning, with . . . the county planning commission, if any . . . ." MCL 125.326(2). Only then may a township adopt a zoning ordinance that implements the basic plan. If the county approves the basic plan, it may site its buildings and determine their use consistent with the township's zoning ordinance. That is, the county is not prevented from exercising its § 11 powers; it merely exercises those powers within a planning and zoning framework that the county planning commission has reviewed and approved.

We also observe that, were we to agree with Washtenaw County's argument and read the statutes as granting counties the plenary power to select sites and use land for any purpose, without regard to the township's land use regulations, it would undermine the legislative intent expressed in the Township Zoning Act, which confers on townships the authority to regulate land use to safeguard the health and welfare of its citizenry. Indeed, the statute specifically allows local entities to plan land development, establish districting, and regulate the use of land and structures

to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land; to insure that use of the land shall be situated in appropri-

ate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities; to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements; and to promote public health, safety, and welfare. [MCL 125.271(1).]

This arguably "broad" grant of power is tempered by a county's authority to approve or reject a township's zoning plans but, absent clear legislative expression otherwise, the county must thereafter abide by the zoning regulations.

We agree with the reasoning of Pittsfield Township and the amicus curiae, Michigan Townships Association, that the zoning and land use statutes express no clear legislative intent to exempt a county from a township's zoning regulations for such purposes as selecting a site for the county's homeless shelter. Moreover, the statutes cited by the county do not indicate that the Legislature intended counties to preempt the field of land and building use regulation. The broad, but nonexclusive powers conferred on the county boards by the enabling statute cannot override the comprehensive statutory scheme that incorporates both the county's and the township's authority in regulating land use within their borders. Thus, reading the statutes in harmony, the county is not exempt from the township's zoning regulations.

In sum, for all the reasons mentioned, we hold that Washtenaw County's right to use its property is subject to, not exempt from, Pittsfield Township's zoning regulations. We reverse the circuit court's grant of summary disposition to the county and remand for

further proceedings consistent with this opinion. We do not retain jurisdiction.

Reversed and remanded.