**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 9, 2003**

PITTSFIELD CHARTER TOWNSHIP,

    Plaintiff-Appellee,

v                                      No. 119590

WASHTENAW COUNTY,

    Defendant-Appellant,

       and

CITY OF ANN ARBOR,

    Defendant.

_____

BEFORE THE ENTIRE COURT

TAYLOR, J.

    The question presented is whether defendant Washtenaw County must comply with plaintiff Pittsfield Charter Township's zoning ordinance in the locating of the county's proposed homeless shelter. We hold that the county does not need to comply with the township's zoning ordinance and, therefore, reverse the judgment of the Court of Appeals and

reinstate the summary-disposition order entered by the trial court.

I

Washtenaw County owns property in Pittsfield Charter Township that the township's zoning ordinance has designated as I-1 (limited industrial). With the financial participation of the city of Ann Arbor, the county advertised a proposal to construct a new homeless shelter, which it would own, on the property. The I-1 district ordinance neither expressly nor conditionally permits such a use.

Pittsfield Township took the position that the proposed use violated its zoning ordinance and thus was impermissible because the Township Zoning Act (TZA), MCL 125.271 *et seq.*, and specifically MCL 125.271(1),[1] gives its

_____

[1]MCL 125.271(1) reads:

> The township board of an organized township in this state may provide by zoning ordinance for the regulation of land development and the establishment of districts in the portions of the township outside the limits of cities and villages which regulate the use of land and structures; to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land; to insure that use of the land shall be situated in appropriate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities; to facilitate adequate and efficient provision for transportation systems, sewage
> (continued...)

disposal, water, energy, education, recreation, and other public service and facility requirements; and to promote public health, safety, and welfare. For these purposes, the township board may divide the township into districts of such number, shape, and area as it considers best suited to carry out this act. The township board of an organized township may use this act to provide by ordinance for the regulation of land development and the establishment of districts which apply only to land areas and activities which are involved in a special program to achieve specific land management objectives and avert or solve specific land use problems, including the regulation of land development and the establishment of districts in areas subject to damage from flooding or beach erosion, and for that purpose may divide the township into districts of a number, shape, and area considered best suited to accomplish those objectives. Ordinances regulating land development may also be adopted designating or limiting the location, the height, number of stories, and size of dwellings, buildings, and structures that may be erected or altered, including tents and trailer coaches, and the specific uses for which dwellings, buildings, and structures, including tents and trailer coaches, may be erected or altered; the area of yards, courts, and other open spaces, and the sanitary, safety, and protective measures that shall be required for the dwellings, buildings, and structures, including tents and trailer coaches; and the maximum number of families which may be housed in buildings, dwellings, and structures, including tents and trailer coaches, erected or altered. The provisions shall be uniform for each class of land or buildings, dwellings, and structures, including tents and trailer coaches, throughout each district, but the provisions in 1 district may differ from those in other districts. A township board shall not regulate or control the drilling, completion, or operation of oil or gas wells, or other wells drilled for oil or gas exploration purposes and shall not have jurisdiction with reference to the issuance of

(continued...)

zoning priority that the county cannot ignore.  The county, however, asserted that, pursuant to the county commissioners act (CCA), MCL 46.1 *et seq.*, specifically MCL 46.11, county boards of commissioners are not subject to the township zoning ordinances when determining the site of, or prescribing the time and manner of erecting, county buildings.  MCL 46.11(b), (d).[2]

The township filed a complaint in the Washtenaw Circuit Court seeking a declaration that the county must comply with the township's zoning ordinance, and seeking to enjoin the county from disregarding the zoning ordinance and proceeding with the construction of the proposed homeless shelter.  The

---

[1](...continued)
permits for the location, drilling, completion, operation, or abandonment of those wells. The jurisdiction relative to wells shall be vested exclusively in the supervisor of wells of this state, as provided in part 615 (Supervisor of wells) of the natural resources and environmental protection act, [MCL 324.61501 to 324.61527.]

[2]MCL 46.11 provides in pertinent parts that a county board of commissioners may:

(b) Determine the site of, remove, or designate a new site for a county building.  The exercise of the authority granted by this subdivision is subject to any requirement of law that the building be located at the county seat.

* * *

(d) Erect the necessary buildings for jails, clerks' offices, and other county buildings, and prescribe the time and manner of erecting them.

4

complaint also named the city of Ann Arbor as a codefendant.[3]

The county filed a motion for summary disposition under MCR 2.116(C)(8), asserting that, as a matter of law, it was immune from the zoning requirements of the township.[4] The township filed a similar motion asserting the converse, that the TZA gave it priority and that, accordingly, the county was not immune. The circuit court, while denying the township's motion, granted the county's motion on the basis that MCL 46.11 granted the county plenary authority to choose sites for buildings and that the county was exempt from Pittsfield Township's zoning ordinances.

On appeal, the Court of Appeals reversed.[5] The Court outlined that the tests for determining exemptions from the requirements of a township zoning ordinance were set out in *Dearden v Detroit*, 403 Mich 257; 269 NW2d 139 (1978)*, Burt Twp v Dep't of Natural Resources,* 459 Mich 659, 669; 593 NW2d

---

[3]At the same time, the township obtained an order to show cause why a preliminary injunction should not issue. On June 16, 1998, a stipulation and order was entered whereby the parties agreed that preliminary injunctive relief was not required. Two subsequent orders extended the defendants' time to respond to the complaint.

[4]The city of Ann Arbor concurred with the county's motion to the extent it requested confirmation of the county's authority to use the property in question for a homeless shelter. Accordingly, we refer only to Washtenaw County as defendant in our discussion.

[5]246 Mich App 356; 633 NW2d 10 (2001).

534 (1999), and *Byrne v Michigan*, 463 Mich 652; 624 NW2d 906 (2001). It then characterized this case law as holding that, to be exempt from the zoning ordinances, the statute granting the county authority to site buildings must explicitly state that it supersedes the zoning ordinance. As the Court described it:

> If the Legislature meant to say that the county's power to site and use its property is plenary (not subject to, but exempt from, any legal restrictions), the Legislature could have easily and expressly said so. It did not, and we conclude that it is neither permissible nor appropriate for us to graft such a plenary gloss on this statutory provision. [246 Mich App 362.]

The county appealed from this ruling and we granted leave to appeal. 466 Mich 859 (2002).

## II

This case is before us on a matter of statutory interpretation. Because this is a matter of law, our review is de novo. *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 739; 641 NW2d 567 (2002).

## III

We are called on to examine the two acts that are the sources of township and county authority, the TZA and the CCA. The TZA vests townships with broad authority to enact zoning ordinances to regulate land development and to "insure that the use of land shall be situated in appropriate locations and

6

relationships . . . ." MCL 125.271(1).[6] The TZA further directs townships to define zones "to meet the needs of the state's residents for . . . places of residence, recreation, industry, trade, service, and other uses of land . . . ." *Id.;* MCL 125.273.[7] This authority given to the townships, however, does not extend to the regulation or control of oil or other wells that are under the jurisdiction of the

_____

[6]The statute is set out in n 1.

[7]MCL 125.273 reads:

> The zoning ordinance shall be based upon a plan designed to promote the public health, safety, and general welfare; to encourage the use of lands in accordance with their character and adaptability, and to limit the improper use of land; to conserve natural resources and energy; to meet the needs of the state's residents for food, fiber, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land; to insure that uses of the land shall be situated in appropriate locations and relationships; to avoid the overcrowding of population; to provide adequate light and air; to lessen congestion on the public roads and streets; to reduce hazards to life and property; to facilitate adequate provision for a system of transportation, sewage disposal, safe and adequate water supply, education, recreation, and other public requirements; and to conserve the expenditure of funds for public improvements and services to conform with the most advantageous uses of land, resources, and properties. The zoning ordinance shall be made with reasonable consideration, among other things, to the character of each district; its peculiar suitability for particular uses; the conservation of property values and natural resources; and the general and appropriate trend and character of land, building, and population development.

7

supervisor of wells pursuant to the Natural Resources and Environmental Protection Act, MCL 324.101 *et seq.*, particularly MCL 324.61501 *et seq.*, or power lines that are subject to the Electric Transmission Line Certification Act, MCL 460.561 *et seq.*

The CCA, upon which the county relies, states at MCL 46.11[8] that counties can determine site selection and the time and manner of erecting county buildings. However, there is one limitation on this power. It is found in the second sentence of MCL 46.11(b) and it limits the site-selection authority by directing that the county cannot disregard any requirement of law holding that a county building be located at the county seat. These provisions are, of course, potentially in tension with each other in their grants of authority. It is our undertaking to establish the proper priority between them.

IV

In adjudicating this matter, the Court of Appeals found a conflict between the authority given to the townships and the counties under the TZA and the CCA. It then resolved this conflict by construing our holdings in *Dearden, Burt Twp, and Byrne* to mean that there must be express indications in the statute granting the county immunity from the township's

[8]The statute is set out, in part, in n 2.

8

zoning power before the county could be immune.

This Court articulated in *Dearden*, *supra* at 264, that in resolving a conflict between units of government the legislative intent, "where it can be discerned," controls the question whether a governmental unit is subject to the provisions of another's zoning ordinances.

In *Burt Twp*, *supra* at 669, we reiterated this approach and cautioned that there are no "talismanic words" that convey the Legislature's intent to create immunity from local zoning. Rather, the Legislature "need only use terms that convey its clear intention that the grant of jurisdiction given is, in fact, exclusive." *Id*.

This Court has also conceded that discerning the legislative intent regarding whether a government unit is immune from the provisions of local zoning ordinances has "proven difficult to apply." *Id*. at 664 n 3. The insight of this observation is made apparent when one looks at the difficulties the Court of Appeals discussed here[9] and which eventuated in what is best described as an almost mechanistic approach for determining priority. The panel essentially held

_____

[9]The Court of Appeals has obviously mellowed a bit on the difficulties of discerning this intent. In an earlier opinion on this topic, it described this undertaking as akin to engaging in "a Hegelian dialectic." *Capital Region Airport Auth v DeWitt Charter Twp*, 236 Mich App 576, 583; 601 NW2d 141 (1999).

9

that if the county's authority is not addressed explicitly by the Legislature, the township ordinances prevail. As we have attempted in the past to explain, the test is not this simple. The analysis requires more than merely searching for words of exclusion. Recently in *Burt Twp* we gave guidance to courts searching for this intent, stating that the Legislature need not "use any particular talismanic words to indicate its intent." *Id*. at 669. This may not, as we had hoped it would, make the task easier, but, at least, it must mean that there are no special words, the absence of which engenders a specific outcome.

Nevertheless, whether easy or not, the question remains: Where do we look to find the intent? The answer is that we must look for guidance to the statutes themselves to see if there are any textual indications that would convey the Legislature's intent on the issue of priority.

We believe that, closely read, the statutes here at issue indicate that the higher priority is with the county. We draw this first from the fact that in the CCA the Legislature expressly stated only one limitation on the authority of the county to site buildings. That limitation is that the county cannot use the power that was given in MCL 46.11 to site buildings if there is any other requirement of law that county buildings be located at the county seat. This language became

10

part of the act in 1998, when the Legislature amended the CCA.[10]  We believe this shows that the Legislature, by explicitly turning its attention to limits on the county siting power and deciding on only one limitation, must have considered the issue of limits and intended no other limitation.  This conclusion is analogous to the discernment of intent undertaken by this Court in *Dearden*.  There we held that the authority given to the state to site prisons gave priority over local zoning ordinances on the basis of the authorizing statute, MCL 791.204, which said that "the department shall have exclusive jurisdiction over . . . penal institutions . . . ."  *Dearden, supra* at 265.  From this we found the intent of the Legislature, stating that we read this language as "a clear expression of the Legislature's intent to vest the department with complete jurisdiction over the

---

[10]1998 PA 97.  Before the amendment of MCL 46.11, the act's similar subsections read:

> (c) Determine the site of a county building.

> * * *

> (e) Remove or designate a new site for a county building required to be at the county seat, if the new site is not outside the limits of the village or city in which the county seat is situated, and remove or designate a new site for a county infirmary or medical care facility.

These subsections were replaced by MCL 46.11(b), set out in n 2.

11

state's penal institutions, subject only to the constitutional powers of the executive and the judiciary, and not subject in any way to any other legislative act, such as the zoning enabling act." *Id.*

In response to this argument, which is properly characterized as applying the doctrine of expressio unius est exclusio alterius, the expression of one thing suggests the exclusion of all others,[11] the township counters that the same approach applied to the TZA yields an outcome that gives the township an equal claim to priority. It argues that the TZA itself has two exemptions from township zoning power, certain wells and electric transmission lines, and that this must mean that, except for these, nothing else should be held to be exempt from township zoning power. The township's position has some appeal certainly, but we believe that a thorough analysis of the application of the doctrine to each statute makes the township's position less defensible than the county's.

While it is correct that the TZA does have exemptions to disallow township zoning regulation or control of the activities surrounding the siting of oil and gas wells or electric transmission lines, in our view, the Legislature, in

---

[11]*Hoste v Shanty Creek Mgt, Inc,* 459 Mich 561, 572 n 8; 592 NW2d 360 (1999).

creating these exemptions, was not concerned with the issue of limits on township zoning power, but was merely engaged in efforts to coordinate the later enacted Electric Transmission Line Certification Act, even as the Legislature in 1943 had attempted to reconcile the then new TZA[12] with the power created four years earlier for the supervisor of wells.[13] Confirmation that mere coordination was the Legislature's goal, at least in 1995, can be discerned from the fact that the Legislature expressly stated in the latest substantive amendment of the TZA, 1995 PA 35,[14] that unless the Electric Transmission Line Certification Act was enacted that the amendment to the TZA would not be effective.

Further, even if expressio unius est exclusio alterius applied equally to benefit each party's arguments, the township's argument, that each has a statute giving priority over the other, would yield to the doctrine of last enactment. *Old Orchard by the Bay Assoc v Hamilton Mut Ins Co*, 434 Mich 244, 257; 454 NW2d 73 (1990). That doctrine presumes that the Legislature is aware of the existence of the law in effect at

---

[12]1943 PA 184.

[13]1939 PA 61.

[14]The TZA was most recently amended, albeit nonsubstantively, by 1996 PA 47, which merely updated the statute number of the Natural Resources and Environmental Protection Act.

the time of its enactments and recognizes that, since one Legislature cannot bind the power of its successor, existing statutory language cannot be a bar to further exceptions set forth in subsequent, substantive enactments. See *Malcolm v East Detroit*, 437 Mich 132; 139; 468 NW2d 479 (1991). In relation to this case, the CCA was substantively amended in 1998, whereas the TZA has not been substantively amended regarding this issue any time since then. Therefore, in the effort to establish priority, the CCA, as the most recent statement of the Legislature, prevails over the TZA.

Further, and perhaps most compellingly, the township's argument, that it also has an equally valid claim to application of the doctrine of expressio unius est exclusio alterius, is flawed because this approach would cause MCL 46.11(b) to be mere surplusage. The reason is that, as argued by the township, MCL 46.11 would only give authority to the county to site buildings as it desired as long as the placement was in harmony with the township's existing zoning plan. Yet this very power was one the county, as well as any other land user, already had before the enactment of MCL 46.11(b). To aver that MCL 46.11(b) simply reiterates a power already possessed is to rob it of any meaning, that is, to make it surplusage. This violates "the fundamental rule of [statutory] construction that every word of a statute should

14

be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible." *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 364; 459 NW2d 279 (1990). The county's position has no defect of this sort. Its argument causes no portion of the TZA to be surplusage. Accordingly, we decline for these reasons also to adopt the township's analysis of these statutes.

Moreover, it is significant to us that the language of the TZA, on which the township relied, is less specific to the particular matter at hand than was the language relied on in *Burt Twp,* in which we determined that the Department of Natural Resources' boat-launch sites were subject to local zoning. *Burt Twp, supra* at 671. In *Burt Twp*, we noted that the TZA authorized a township to regulate land development to facilitate "recreation" and that zoning plans were to be designed to "conserve natural resources." *Id*. at 665. Further, we noted that under the township planning act, MCL 125.321 *et seq.*, the township plan was to include recommendations for, inter alia, "'waterways and waterfront developments.'" *Id*. at 666, quoting MCL 125.327(2)(b). These topics—recreation, natural resources, waterways, and waterfront development—suggested to us in *Burt Twp* that there had been legislative consideration of the priority issue in the area of recreational water access and usage and

15

accordingly led us to the conclusion that the township authority was meant to have priority. In the present case, however, when one reviews the mandates of the TZA, as relevant to siting county buildings, the TZA yields only highly generalized references to "places of residence," "other uses of land," and "other public requirements . . . ." MCL 125.273. These seem to suggest no conclusion by the Legislature that the location of county buildings of any kind should be controlled by township zoning. Therefore, when these TZA provisions are viewed alongside the structure of the county power in MCL 46.11, the lack of focus on county buildings in the TZA reinforces our view that the Legislature in this circumstance intended that priority be given to the county in siting its buildings.

We note also that the Court of Appeals made reference to the County Zoning Act, MCL 125.201 *et seq.*, and attempted, by dovetailing it with the TZA, specifically MCL 125.298, to buttress its analysis. This approach is less helpful than the Court thought, however, because it failed to fully consider that we are not dealing here with a decision taken pursuant to the county's zoning authority and thus the effort to analyze this matter as implicating "a comprehensive statutory scheme" is unpersuasive. 246 Mich App 367.

Finally, we also are mindful of the *Dearden* Court's

16

policy analysis, which, while undoubtedly less implicated here, still has relevance. The *Dearden* Court said:

> [T]he zoning enabling act does not indicate whether or not the Legislature intended to subject the department to local zoning ordinances. We can find no expression of a legislative intent in the language of that act to subject the department's exclusive jurisdiction over the state's penal institutions, and its duty to coordinate and adjust those institutions as an integral part of a unified, general correctional system, to the many and varied municipal zoning ordinances throughout the state. If the department were subject to those ordinances, the underlying policies of the general correctional system could be effectively thwarted by community after community prohibiting the placement of certain penal institutions in appropriate locations. A careful reading of the statute establishing the department evidences a contrary legislative intent. [*Id*. at 266-267.]

For these reasons, we reverse the decision of the Court of Appeals and reinstate the circuit court's order of summary disposition.

Clifford W. Taylor
Maura D. Corrigan
Michael F. Cavanagh
Marilyn Kelly
Robert P. Young, Jr.
Stephen J. Markman

17

# STATE OF MICHIGAN

## SUPREME COURT

PITTSFIELD CHARTER TOWNSHIP,

    Plaintiff-Appellee,

v                                No.  119590

WASHTENAW COUNTY,

    Defendant-Appellant,

        and

CITY OF ANN ARBOR,

    Defendant.

_____

WEAVER, J. (*concurring*).

I concur with the majority's result, but find its reliance on a small host of statutory-construction tools unhelpful and unnecessary. The majority's use of these tools to search for "textual indications" to resolve the conflict between the statutes at issue is remarkable in its failure to analyze the text of the statutes. In my view, the plain text of the county commissioners act (CCA) clearly conveys the Legislature's intent to grant county boards of commissioners exclusive jurisdiction over site selection for and

construction of county buildings.[1]

MCL 46.11 of the CCA provides in pertinent part that county boards of commissioners may:

> (b) Determine the site of, remove, or designate a new site for a county building.
>
> * * *
>
> (d) Erect the necessary buildings for jails, clerks' offices, and other county buildings, and prescribe the time and manner of erecting them.

On the other hand, the Township Zoning Act (TZA), MCL 125.271 *et seq.,* vests townships with broad authority to enact zoning ordinances to regulate land development and "to insure that the use of land shall be situated in appropriate locations and relationships . . . ." MCL 125.271(1), cf. MCL 125.273. Anticipated or not by the Legislature, county-commission authority over site selection for, and the time and manner of erecting, county buildings as stated by MCL 46.11 conflicts with the township's statutory authority over both the process and substance of township zoning.

Three powers vested by the Legislature in county

---

[1] As this Court held in *Dearden v Detroit,* 403 Mich 257, 264; 269 NW2d 139 (1978), the legislative intent, "where it can be discerned," controls the question whether a governmental unit is subject to the provisions of another's zoning ordinances. In *Burt Twp v Dep't of Natural Resources,* 459 Mich 659, 669; 593 NW2d 534 (1999), we held that the Legislature "need only use terms that convey its clear intention that the grant of jurisdiction given is, in fact, exclusive."

2

commissions through MCL 46.11 are relevant to and decisive of this case. MCL 46.11 provides that county boards may "determine the site of," "prescribe the time . . . of erecting," and "prescribe the . . . manner of erecting" county buildings. Because county commissions have had this express statutory authority over site selection and the time and manner of erecting county buildings since the CCA was first enacted in 1851, the majority's application of the last-enactment doctrine is unpersuasive.[2]

"Determine" and "prescribe" convey the scope of county-commission authority over the development of county buildings (i.e., site selection and the time and manner of construction). To "determine" is to "set limits to; bound; define" or to "settle (a dispute, question, etc.) conclusively; decide." *Webster's New World Dictionary* (3d College ed). To "prescribe" is "to write beforehand . . . to set down as a rule or direction; order; ordain; direct." *Id.*

---

[2]The majority suggests that MCL 46.11 was "substantively amended in 1998," *ante* at 15, but fails to explain how the 1998 amendments were relevant to the powers county commissions have held since 1851. Further, the doctrine of last enactment seems an odd choice in resolving this case because the doctrine is most often argued to support the implied repeal of one law by a later enacted law. Not even the county argues that the CCA repealed any portion of the TZA. Perhaps that is because repeals by implication are not favored. *Washtenaw Co Rd Comm'rs v Pub Service Comm,* 349 Mich 663, 680; 85 NW2d 134 (1957).

While the CCA does not include the words "exclusive jurisdiction" in reference to county-commission authority over site selection for and construction of county buildings, this Court has emphasized that such "talismanic words" are unnecessary to convey the Legislature's intent to create immunity from local zoning. *Burt, supra* at 669.

Where, as here, a county board seeks to site a county building in a township zoning district where the commission's intended use for the building is not permitted, the commission's power to "determine the site of" a county building conflicts with the township's authority to create zoning districts that exclude defined land uses. MCL 46.11, 125.271(1). Moreover, the authority to "prescribe the time . . . of erecting" county buildings affects the township's process for reviewing site plans. More critically, in my view, the authority to "prescribe the . . . manner of erecting" county buildings overrides a township's control through the enactment of ordinances of the physical details of erecting buildings.[3]

---

[3]MCL 125.271(1) provides that "[o]rdinances regulating land development may also be adopted designating or limiting the location, height, number of stories, and size of dwellings, buildings, and structures [that] may be erected or altered; the area of yards, courts, and other open spaces, and sanitary, safety, and protective measures that shall be required for the dwellings, buildings, and structures . . . erected or altered."

4

In circumstances such as those presented, the county commission's site-selection authority and its authority to prescribe the time and manner of erecting county buildings is diminished if the county board must comply with a township's zoning districts just as the township's authority to establish zoning districts is diminished if the county commission need not comply with township zoning districts when determining a site for a county building. In light of the conflict, either the township or the county must relinquish some statutory authority.[4] In this dispute, I would hold that the combined effect of the power to "determine the site" and the powers to "prescribe the time and manner of erecting" county buildings conveys a clear legislative intent to convey exclusive jurisdiction over the siting and construction of county buildings to county commissions.[5]

---

[4]Therefore, the surplusage argument that the majority finds so compelling is of small assistance in determining which party prevails.

[5]The authority of county boards pursuant to MCL 46.11 is distinguishable from that of the Department of Natural Resources (DNR) as expressed in the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq*. The NREPA vests the DNR with the authority to construct public boat launches. In *Burt Twp, supra,* this Court concluded that while the NREPA gave the DNR the "'power and jurisdiction' to manage land within its control," such authority was "not the same as granting it *exclusive* jurisdiction," *id*. at 669-670 (emphasis in original), reasoning that "the fact that the DNR is mandated to create recreational facilities on public land it manages and controls does not indicate a legislative intent
(continued...)

5

Further, the majority reads more than can be justified into the 1998 amendments of MCL 46.11 regarding a limitation of county-commission authority over buildings required by law to be at a county seat. Any modification of the county-seat limitation on a county board's site-selection authority does not, as suggested by the majority, show that the Legislature "must have considered the issue of limits [on commission authority over county buildings] and intended no other limitation." *Ante* at 12. Such reasoning is sheer speculation and especially unconvincing because a county-seat limitation on site selection for certain county buildings appears consistently to have been included in the CCA.[6]

The Court of Appeals panel suggested this conclusion and interpretation of MCL 46.11 would impermissibly "graft . . . plenary gloss on this statutory provision," 246 Mich App 356,

_____

[5](...continued)
that the DNR may do so in contravention of local zoning ordinances." *Id.* at 670.

[6]As noted by the majority, before 1998, MCL 46.11(e) provided: "Remove or designate a new site for a county building required to be at the county seat, *if the new site is not outside the limits of the village or city in which the county seat is situated . . . .*" (Emphasis added.) Similarly, 1851 PA 156, § 11, ¶ 5, provided that the county commission may "remove or designate a new site for any county buildings required to be at the county seats, *when such removal shall not exceed the limits of the village or city at which the county seat is situated as previously located.*" (Emphasis added.) The actual text of these incarnations of the county-seat limitation do not appear significantly different from the limitation as it is currently drafted.

6

362; 633 NW2d 10 (2001). I disagree by noting that the powers vested in county commissions over county buildings are conveyed in terms analogous to those by which the Legislature vested control over the state's penal system in the Department of Corrections.[7] In *Dearden,* the Department of Corrections' enabling statute expressed the Legislature's "intent to vest the [Department of Corrections] with complete jurisdiction over the state's penal institutions . . . ." *Dearden, supra* at 265. The language of the department's enabling statute vested the department with "'exclusive jurisdiction over . . . penal institutions . . . .'" *Id.,* quoting MCL 791.204. Moreover, the Legislature expressly authorized the department to provide for the "'unified development'" of penal institutions "'so that each shall form an integral part of a general system.'" *Id.* at 266, quoting MCL 791.202.

For these reasons, I concur in the result of the majority opinion.

Elizabeth A. Weaver

---

[7]It is worth noting that, contrary to the majority's suggestion, the majority's construction of the county seat site selection limitation is in no way "analogous to the discernment of intent undertaken by this Court in *Dearden.*" *Ante* at 12. *Dearden* focused on the text of the statute to discern the Legislature's intent; the majority fails to consider the text of the statute.

7