MArkman, J.
(dissenting). The majority concludes that the Second Injury Fund (the fund) is automatically liable for a certified vocationally disabled employee’s disability benefits after fifty-two weeks, notwithstanding the fact that the employer’s carrier has failed to comply with the notice provisions of MCL 418.925(1). I respectfully disagree. Because § 925(1) provides that a carrier “shall notify” the fund at least ninety days before the normal expiration of the carrier’s liability, I do not agree with the majority that the fund’s liability is automatic at the expiration of fifty-two weeks from the date of the injury, without regard to the compliance of the carrier with its statutory obligation. Instead, I conclude that the better reading of the vocational disability chapter of the Worker’s Disability Compensation Act requires that the carrier must notify the fund at least ninety days before the liability limitation set forth in MCL 418.921 can become effective. Accordingly, I would reverse the decision of the Court of Appeals and hold that the fund’s liability was not triggered in this case until ninety days after it received statutory notice from the carrier.
When plaintiff began working for defendant Oak-wood Hospital and Medical Center (Oakwood) in 1989, she was certified as vocationally disabled because of a prior back injury.[1] She developed bilateral carpal tunnel *706 syndrome in 1993; after surgery failed to provide relief from the pain, she left her employment on September 21, 1994. Oakwood paid worker’s compensation benefits until March 1998, when it stopped payment on the basis of plaintiffs alleged work avoidance. Plaintiff applied for a hearing in May 1998. Shortly thereafter, Oakwood found plaintiffs vocationally handicapped worker’s certificate and filed a claim against defendant fund for reimbursement of the benefits it paid plaintiff beyond the fifty-two-week period set by § 921. The magistrate granted the fund’s motion to dismiss on the basis of Oakwood’s failure to provide timely notice under § 925. The Worker’s Compensation Appellate Commission (WCAC) reversed, remanding with an instruction to make the fund a party. On remand, the magistrate again dismissed the fund, citing Robinson v Gen Motors Corp, 242 Mich App 331; 619 NW2d 411 (2000), which had been released in the interim. The magistrate then rejected Oakwood’s work avoidance claim, granting plaintiff an open award of benefits. The WCAC reversed, concluding that neither Oakwood nor the fund was liable for additional benefits. The Court of Appeals then reversed the WCAC, holding that Oak-wood’s failure to timely provide notice meant that it remained liable as long as plaintiff had a work-related disability. 259 Mich App 298; 674 NW2d 160 (2003).
We review issues of statutory construction de novo. Burton v Reed City Hosp Corp, 471 Mich 745, 757; 691 NW2d 424 (2005). We recently noted “the fundamental rule” of statutory construction that “every word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible.” Pittsfield Charter Twp v Washtenaw Co, 468 *707 Mich 702, 714; 664 NW2d 193 (2003). The word “shall” is “unambiguous and denote[s] a mandatory, rather than discretionary action.” Roberts v Mecosta Co Gen Hosp, 466 Mich 57, 65; 642 NW2d 663 (2002). The provisions of a statute must be read in the context of the entire statute in the interest of producing an harmonious whole. Burton, supra at 757.
As a result of her certification as a vocationally disabled person, plaintiffs subsequent work-related injury triggered § 921 of the Worker’s Disability Compensation Act (WDCA). That section (MCL 418.921) provides:
A person certified as vocationally disabled who receives a personal injury arising out of and in the course of his employment and resulting in death or disability, shall be paid compensation in the manner and to the extent provided in this act, or in case of his death resulting from such injury, the compensation shall be paid to his dependents. The liability of the employer for payment of compensation, for furnishing medical care or for payment of expenses of the employee’s last illness and burial as provided in this act shall be limited to those benefits accruing during the period of 52 weeks after the date of injury. Thereafter, all compensation and the cost of all medical care and expenses of the employee’s last sickness and burial shall be the liability of the fund. The fund shall be liable, from the date of injury, for those vocational rehabilitation benefits provided in section 319.
However, § 921 does not exist in a vacuum. Section 925(1) of the WDCA (MCL 418.925[1]) further provides:
When a vocationally disabled person receives a personal injury, the procedure and practice provided in this act applies to all proceedings under this chapter, except where specifically otherwise provided herein. Not less than 90 nor more than 150 days before the expiration of 52 weeks after the date of injury, the carrier shall notify the fund whether it is likely that compensation may be payable beyond a *708 period of 52 weeks after the date of injury. The fund, thereafter, may review, at reasonable times, such information as the carrier has regarding the accident, and the nature and extent of the injury and disability.
While these statutes normally coexist harmoniously, a conflict arises where, as here, the carrier[2] has failed to timely notify the fund of a situation where “it is likely that compensation may be payable beyond a period of 52 weeks after the date of injury.” In such a case, the carrier has violated the mandate of § 925(1) that it “shall notify” the fund, yet the consequences of such violation are not readily apparent because § 921 mandates that the employer’s liability “shall be limited to... 52 weeks.”
The majority correctly concludes that the interpretation of the Court of Appeals, based upon Robinson and Valencic v TPM, Inc, 248 Mich App 601; 639 NW2d 846 (2001), cannot stand. In concluding that the carrier’s failure to timely notify the fund served as a permanent and complete bar to the fund’s liability, Robinson and its progeny ignored the instruction in § 921 that “liability of the employer ... shall be limited to those benefits accruing during the period of 52 weeks after the date of injury.” Robinson’s sanction of complete dismissal of the fund creates a clear conflict with the text of § 921.[3]
*709 However, despite recognizing that the Robinson line of cases completely ignores one statutory mandate at the expense of another, the rule the majority adopts today has exactly the same effect. Section 925(1) provides:
Not less than 90 nor more than 150 days before the expiration of 52 weeks after the date of injury, the carrier shall notify the fund whether it is likely that compensation may be payable beyond a period of 52 weeks after the date of injury. [MCL 418.925(1) (emphasis added).]
Applying basic principles of statutory construction, the Legislature’s use of the words “shall notify” makes clear that notification to the fund is mandatory. However, far from giving meaning to every word of the statute, the majority effectively reads this mandatory notification language out of the statute. I do not believe that the Legislature intended to make such notice requirement “mandatory,” yet intended no remedy or means of enforcement for such requirement.
In my judgment, the most harmonious and natural reading of the vocational disability chapter as a whole would limit the employer’s liability to a period of fifty-two weeks under § 921, provided that the carrier complies with the notice requirement of § 925(1). Where the carrier fails to notify the fund of the possibility that benefits will remain payable under this chapter, the employer’s liability continues until such time as ninety days have passed from when the fund receives notification. See § 925(1). This approach is sounder, I believe, than that of the majority by giving meaning to both the limitation on the employer’s liability in § 921 and the requirement that notice be given to *710 the fund in § 925(1), thereby giving effect to all the relevant language of the law. At the same time, as long as the carrier supplied notice to the fund at some point, this approach would avoid permanently placing responsibility for the payment of benefits upon the employer, as would be effected by Robinson and Valencic.[4]
Moreover, because an injury to any other, non-“vocationally disabled,” employee would result in indefinite liability to the employer, the limited penalty suffered by the employer who fails to comply with the notice requirement does not seem unreasonable.[5] Because the employer essentially derives a benefit under the WDCA by hiring the vocationally disabled employee, in that its liability ordinarily ceases after fifty-two weeks in the face of a second injury, it does not seem *711 unreasonable to require the employer to comply with the act in order to receive such benefit.[6]
I am not oblivious to the argument that the interpretation in this dissent accords inadequate consideration to the “shall be limited to those benefits accruing during the period of 52 weeks after the date of injury” language in § 921. There is simply no perfect interpretation of this confusing statute, merely a less imperfect and a more imperfect interpretation. I believe that the interpretation here accords at least some meaning to the “shall” language in both § 921 and § 925(1), while the majority’s interpretation effectively ignores the “shall” language in § 925(1).[7]
*712 Accordingly, I would reverse the decision of the Court of Appeals affirming the dismissal of the fund from the suit, and hold that the fund became liable for plaintiffs benefits ninety days after Oakwood provided the notice required under § 925(1). Before that time, Oakwood remained liable for these benefits.
CAVANAGH, J., concurred with MARKMAN, J.

 “ ‘Vocationally disabled’ means a person who has a medically certifiable impairment of the back or heart, or who is subject to epilepsy, or who has diabetes, and whose impairment is a substantial obstacle to employ *706 ment, considering such factors as the person’s age, education, training, experience, and employment rejection.” MCL 418.901(a).

 Under MCL 418.601, the definition of “carrier” includes both an insurer and a self-insured employer, such as Oakwood in the present case. Thus, as noted by the majority, the distinction between “employer” and “carrier” has no bearing on this case. Ante at 690 n 3.

 As an example of the impact of Robinson’s sanction of dismissal upon an employer or a carrier, one need only look at Valencic. In that case, because of confusion regarding which insurer was the “carrier” at the time of the plaintiffs injury, the carrier ultimately found hable was not alerted to the existence of the injury until four years after it occurred. Valencic, supra at 604, 608. Notwithstanding that the carrier had no knowledge of the injury until long after the notice provision of § 925(1) had expired, the fund was dismissed from the suit because the carrier had *709 not provided timely notice. This left the fall liability to fall on the shoulders of the employer or carrier.

 Contrary to the majority’s assertion, this dissent does not “reheve the fund of all liability if the carrier fails to provide the notice required by § 925.” Ante at 695 n 7 (emphasis added). Rather, as has been made clear, the employer’s liability would continue beyond fifty-two weeks only until such time as the carrier has complied with the notice requirements of § 925. The fund would then become hable ninety days after the carrier has provided the notice required by the statute.

 The majority asserts that this interpretation would be neither “reasonable” nor “equitable” in situations in which the carrier and the employer were not the same party, because in such situations the failure of the carrier to provide timely notice would result in hability to the employer. Ante at 696 n 7. By this observation, the majority treats the employers of this state as essentially passive participants in the marketplace, incapable of protecting their own economic interests without the strained interpretations of this Court. Employers are perfectly capable of contracting with their own carriers, as well as utilizing the legal process where necessary, to ensure that the risks of liability in cases such as this one fall upon the party whose failure to comply with its statutory duty caused liability. Further, unlike what occurred in this case, there is nothing to prevent an employer from simply monitoring its carrier with regard to the typically few injured, vocationally disabled employees employed by an employer to ensure that the carrier carries out the required notification.

 The majority implies that the fund will not be prejudiced by a delay in notification, because under MCL 418.925(2), the fund “may dispute an employee’s eligibility for payment” at any time. Ante at 698. However, the majority fails to consider that one of the purposes of the notice requirement is to allow the fund to timely investigate the validity of such claims. While it may be true that the fund may dispute an employee’s eligibility for payments at any time, evidentiary concerns too obvious to state suggest that the fund is in a better position to dispute such eligibility if the investigation comes sooner rather than later.

 The majority struggles to accord some modicum of meaning to § 925(1). It suggests that the “Legislature intended several consequences for failure to give notice under § 925(1).” Ante at 697. First, it suggests that the loss of the temporary use of the carrier’s money serves as an adequate sanction. Ante at 697-698. If the majority is correct that the Legislature intended as a sanction the loss of interest on certain benefits paid out, then the majority has discerned a sanction that is most noticeable by its absence from the language of the statute, and which sanction is a notably ineffectual one to boot.
Second, the majority suggests that another sanction exists in cases in which an employee becomes ineligible for benefits after fifty-two weeks, because “[i]f the employee is not eligible, there is no liability to pay benefits under MCL 418.921.” Ante at 698. However, in characterizing the Legislature’s unremarkable decision that fraudulent claims should not be reimbursed as a “consequence” of untimely notification, the majority'misapprehends the statutory scheme. The fund’s ability to contest an employee’s eligibility is not a “consequence” of the carrier’s *712 failure to comply with the notice requirement of § 925(1), but rather a “consequence” of the plain language of § 925(2), which provides that the fund may dispute the employee’s eligibility “at any time.” Because the fund has this power at any time regardless of when it received notice, it can hardly be said that such power is a “consequence” of untimely notice.