DEARDEN v CITY OF DETROIT

Docket No. 58974. Argued January 6, 1978 (Calendar No. 18).—Decided August 30, 1978. Rehearing denied *post,* p. 957.

John F. Dearden, Archbishop of the Roman Catholic Archdiocese of Detroit, and St. Theresa's Roman Catholic Church brought an action for superintending control to compel the Detroit Board of Zoning Appeals to issue a variance under the city's zoning ordinance for a convent building owned by the archdiocese in an area zoned two-family residential to be used by the Department of Corrections as a neighborhood center to rehabilitate convicts while they live under state supervision. The Attorney General intervened as a plaintiff on behalf of the Department of Corrections and argued that the Department of Corrections is not subject to the regulation of a municipal zoning ordinance. The Wayne Circuit Court, Blair Moody, Jr., J., granted judgment for the defendant. The Court of Appeals, V. J. Brennan, P.J., and R. M. Maher and Britten, JJ., affirmed (Docket No. 23431). Intervening plaintiff appeals. *Held:*

1. The legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances. In the instant case the conflict is between the statutory authority of the Department of Corrections over the state's penal institutions and the city's statutory· authority to regulate the use of the lands within its territory.

2. The zoning enabling act does not disclose what effect, if any, a zoning ordinance should have on state agencies. However, in establishing the jurisdiction of the Department of Corrections, the Legislature expressly provided that the department "shall have exclusive jurisdiction over" penal institutions.

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Zoning and Planning § 150.
    Applicability of zoning regulations to governmental projects or activities. 61 ALR2d 970.
[2, 3] 60 Am Jur 2d, Penal and Correctional Institutions § 3 *et seq.*
    82 Am Jur 2d, Zoning and Planning § 149 *et seq.*
[4] 72 Am Jur 2d, States, Territories, and Dependencies § 113.
    82 Am Jur 2d, Zoning and Planning § 101.

This is a clear expression of the Legislature's intent to vest the department with complete jurisdiction over the state's penal institutions, subject only to the constitutional powers of the executive and judiciary, and not subject in any way to any other legislative act, such as the zoning enabling act. This reading of the statutory power of the Department of Corrections is consistent with the title of the act establishing the department which states that the act is "to repeal all acts and parts of acts inconsistent with the provisions of this act". This language evidences a legislative intent to nullify the effect of any other statute which is inconsistent with the department's exclusive jurisdiction over the state's penal institutions. The act also provides that the Corrections Commission shall determine "*all matters* relating to the unified development of the penal institutions". This language also shows an intent to vest full power in the Corrections Commission to develop a general system of state correctional institutions. If the Department of Corrections were subject to municipal zoning ordinances, the underlying policies of the general correctional system could be effectively thwarted by communities prohibiting the placement of certain penal institutions in appropriate locations.

3. The Legislature intended to grant the Department of Corrections immunity from local zoning ordinances when establishing state penal institutions. Consequently, the defendant's zoning ordinance is void to the extent that it attempts to prohibit the use of the plaintiffs' property as a rehabilitation center.

4. The fact that the plaintiffs are private lessors does not affect the immunity of the lessee Department of Corrections because the entire statutory scheme of the zoning enabling act is concerned with regulating the *use* of lands and structures, not ownership.

Reversed.

70 Mich App 163; 245 NW2d 700 (1976) reversed.

1. ZONING — ORDINANCES — GOVERNMENTAL IMMUNITY.

The legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances (MCL 125.581 *et seq.;* MSA 5.2931 *et seq.).*

2. PRISONS — DEPARTMENT OF CORRECTIONS — ZONING — ORDI-NANCES.

The Legislature clearly expressed its intent to vest the Department of Corrections with complete jurisdiction over the state's

penal institutions, subject only to the constitutional powers of the executive and judiciary, and not subject in any way to any other legislative act, such as the zoning enabling act (MCL 125.581 *et seq.,* 791.201 *et seq.;* MSA 5.2931 *et seq.,* 28.2271 *et seq.).*

3. ZONING — ORDINANCES — PRISONS — DEPARTMENT OF CORRECTIONS — GOVERNMENTAL IMMUNITY.

The Legislature intended to grant the Department of Corrections immunity from local zoning ordinances when establishing state penal institutions; consequently, the zoning ordinance of the City of Detroit is void to the extent that it attempts to prohibit the use of property by the Department of Corrections as a rehabilitation center for convicts under state supervision (MCL 125.581 *et seq.,* 791.201 *et seq.;* MSA 5.2931 *et seq.,* 28.2271 *et seq.).*

4. ZONING — ORDINANCES — GOVERNMENTAL IMMUNITY — LAND USE — OWNERSHIP.

The fact that land is privately owned does not affect the governmental immunity of the use by a lessee which is a unit of state government not subject to a municipal zoning ordinance; the entire statutory scheme of the zoning enabling act is concerned with regulating the *use* of lands and structures, not ownership (MCL 125.581 *et seq.;* MSA 5.2931 *et seq.).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Solomon H. Bienenfeld,* First Assistant Attorney General, and *Mark E. Blumer,* Assistant Attorney General, for intervening plaintiff.

*Roger E. Craig,* Corporation Counsel, and *John F. Hathaway* and *William B. Beach,* Assistants Corporation Counsel, for defendant.

RYAN, J. This case requires us to determine whether the Michigan Department of Corrections is subject to the regulation of a municipal zoning ordinance when the department is leasing an existing facility for use as a neighborhood pre-release center. We hold it is not subject to the zoning ordinance.

I

Plaintiff archdiocese has owned the property in Detroit that is the subject of this litigation for some time. In 1938, the archdiocese constructed a three-story, multi-residential structure on that property for use as a convent. When the city adopted a zoning ordinance in 1940, the property was zoned R2 (two-family residential). However, the building's use as a convent continued, undisturbed, as a nonconforming use.

In the latter months of 1970, the archdiocese leased this structure to the Department of Corrections to be used as a neighborhood rehabilitation center. The center provides controlled and closely supervised housing for certain convicts during the last 90 days of their sentences. It affords its occupants an opportunity to adjust to the transition from prison to civilian life by living in a residential area while working at a job or attending school.

After the department had begun using the building, the lessor archdiocese applied to the Detroit Department of Building and Safety Engineering for permission to use the former convent as a rehabilitation center. This application was denied and the archdiocese appealed to the Board of Zoning Appeals.

When the board denied the request for a variance and permission to change the use of the property, the archdiocese filed a complaint for superintending control in circuit court, seeking to set aside the board's order. There the appellant, Michigan Department of Corrections, intervened. The circuit court affirmed the decision of the Board of Zoning Appeals and, subsequently, the

Court of Appeals affirmed the decision of the trial court.[1]

We granted the Department of Corrections' application for leave to appeal and for a stay of the lower court order pending appeal. 400 Mich 815 (1977).

We reverse.

## II

We are asked in this case to decide whether the Department of Corrections, an agency of the state, is immune from, or subject to, the local zoning ordinance of the City of Detroit, a political subdivision of the state.

Although many courts in other jurisdictions have adjudicated similar cases, the tests employed to resolve the stated issue have proven to be largely unsatisfactory. In reaching their decisions, some courts have held that the sovereignty of the state extends to its agencies and renders them immune from compliance with local zoning ordinances. Others have based immunity on a determination that the function, use or activity of the agency was "governmental" as opposed to "proprietary". Still others have found immunity if the agency was granted the power of eminent domain, regardless of whether it chose to exercise that power to obtain the use of the property.[2]

---

[1] *Dearden v Detroit,* 70 Mich App 163; 245 NW2d 700 (1976).

[2] See the cases collected in the articles cited in fn 3, *infra.*

A review of these cases has led some commentators to conclude in treatises that, as a general rule,

"Municipal zoning regulations or restrictions usually do not apply to the state or any of its subdivisions or agencies, unless the Legislature has clearly manifested a contrary intent. Thus, properties and the uses thereof may be immune or exempt from the operation of municipal zoning regulations where owned or controlled by counties, school districts or boards, park districts or like bodies, or by other agencies or subdivisions of the state." (Footnotes omitted.) 8 McQuillin, Municipal Corporations (3d ed, 1976), § 25.15, p 37.

A number of legal commentators have soundly criticized these tests, claiming the courts have employed inappropriately simplistic labels to decide these cases, instead of coming squarely to grips with the critical question of which, among competing governmental interests, should prevail in any particular situation of conflict between them.[3]

No Michigan case has resolved, with finality, the question of whether our state or its agencies are inherently immune from local zoning ordinances. Nonetheless, a review of our earlier cases dealing with the issue in varying contexts is of some value in our effort to develop the proper test for deciding the question before us.

In *Taber v Benton Harbor,* 280 Mich 522; 274 NW 324 (1937), a city was held to be subject to its own zoning ordinance when constructing a water tower because the construction was found to be a proprietary function, and no exemption for the city was provided in the ordinance. We think this proprietary-governmental distinction has been

---

See, also, 2 Anderson, American Law of Zoning (2d ed, 1976), § 12.06, pp 408, 411.

[3] "Traditionally courts have responded in rather simplistic terms to attempts by governmental units to circumvent restrictive municipal zoning ordinances. Inconsistent results proliferate due largely to state court reliance upon artificial labels to rationalize 'governmental immunity' from local zoning ordinances. Such unhelpful epithets as the 'governmental-proprietary distinction,' or the 'inherent immunity of the sovereign in exercising the power of eminent domain,' often serve as distracting surrogates for reasoned adjudication. They beg the critical question of which governmental interest should prevail when there is a conflict between the zoning ordinance of one political unit and the statutory authority of another unit to perform a designated public function." Note: *Governmental Immunity from Local Zoning Ordinances,* 84 Harv L Rev 869 (1971). See, also, Johnston, *Recent Cases in the Law on Intergovernmental Zoning Immunity: New Standards Designed to Maximize the Public Interests,* 8 Urb Lawyer 327 (1976); Wolff, *The Inapplicability of Municipal Zoning Ordinances to Governmental Land Uses,* 19 Syr L Rev 698 (1968); and, Note: *Municipal Power to Regulate Building Construction and Land Use by Other State Agencies,* 49 Minn L Rev 284 (1964).

justly criticized as too amorphous to provide any real guidance in deciding this case and reject it as controlling. It is worth noting, however, that the *Taber* Court looked to the zoning ordinance for direction in deciding the controversy, and found that to allow the tower to be built would be in:

"[D]isregard of the plain legislative enactments of [defendant's] citizens." 280 Mich 522, 526.

In *In re Petition of Detroit for Condemnation of Lands for Airport,* 308 Mich 480; 14 NW2d 140 (1944), a township ordinance which prohibited the use of certain lands for an airport was found to be unenforceable and void because it was in direct conflict with a general statute granting cities the power to acquire, own and operate airports either within or without their city limits. Although the case involved condemnation proceedings by the city, the power of condemnation was not relied upon as the basis for the Court's ruling. Rather, the Court's decision appears to rest on the finding that the broad grant of statutory power to the city was an expression of legislative intent to exempt the city from local land use regulation.

In *DeGaynor v Dickinson County Memorial Hospital Board of Trustees,* 363 Mich 428; 109 NW2d 777 (1961), the Court held that a county hospital was subject to a municipal zoning ordinance. The Court reached this conclusion because it could find no exception in the zoning enabling act for county hospitals and it did find a specific provision in the statute under which the hospital was established that required compliance with the ordinances of the city in which the hospital was located.

The Court in *Renshaw v Coldwater Housing Commission,* 381 Mich 590, 594; 165 NW2d 5

(1969), held that a municipality's housing commission was not subject to the municipality's zoning ordinance. In so declaring, the Court found that the statute under which the commission was established contained conspicuous and repeated expressions of the Legislature's intent to exempt the commission from all other laws, including statutes, charters or ordinances, which were in conflict with its statutory authority.

Finally, in *Detroit Edison Co v Wixom,* 382 Mich 673, 683; 172 NW2d 382 (1969), the Court found the Public Service Commission was prohibited from approving construction of an electrical line for a utility in violation of a municipal zoning ordinance. The Court reached this conclusion after noting the statutory power of the commission to regulate all public utilities was qualified by the phrase, "except as otherwise restricted by law".

The common thread running through these cases, although not clearly stated in some, is an attempt to determine the intent of the Legislature when deciding whether a governmental unit is subject to a municipal zoning ordinance. We hold today that the legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances.[4]

In the case before us, we are asked to resolve a conflict between the statutory authority of the Department of Corrections over the state's penal institutions[5] and the city's statutory authority to regulate the use of the lands within its territory.[6]

As we have observed, our prior case law sup-

---

[4] For a case adopting a similar test, see *Rutgers, the State University v Piluso,* 60 NJ 142; 286 A2d 697 (1972).

[5] MCL 791.201 *et seq.;* MSA 28.2271 *et seq.*

[6] MCL 125.581 *et seq.;* MSA 5.2931 *et seq.*

ports the Court of Appeals characterization of this issue as one, not of absolute governmental immunity, but rather of legislative intent. We agree with that Court that the zoning enabling act does not disclose what effect, if any, a zoning ordinance should have on state agencies. We disagree, however, with that Court's analysis of the legislation which established the authority of the Department of Corrections. 70 Mich App 163, 168; 245 NW2d 700 (1976).

The Court of Appeals found no indication of whether or not the department was to be subject to local ordinances in the legislation which established the authority of the department. We read that legislation differently.

In establishing the jurisdiction of the Department of Corrections, the Legislature expressly provided:

"Subject to constitutional powers vested in the executive and judicial departments of the state, the department *shall have exclusive jurisdiction* over the following: * * * (c) penal institutions * * *." MCL 791.204; MSA 28.2274. (Emphasis supplied.)

We read this language as a clear expression of the Legislature's intent to vest the department with complete jurisdiction over the state's penal institutions, subject only to the constitutional powers of the executive and judiciary, and not subject in any way to any other legislative act, such as the zoning enabling act.

This reading of the statutory power of the department is supported by the title of the statute.

That title provides in pertinent part:

"AN ACT to revise, consolidate and codify the laws relating * * * to the administration of penal institu-

tions, * * * to create a state department of corrections, and to prescribe its powers and duties; * * * *and to repeal all acts and parts of acts inconsistent with the provisions of this act."* (Emphasis supplied.)

This language evidences a legislative intent to nullify the effect of any other statute which is inconsistent with the department's exclusive jurisdiction over the state's penal institutions as granted in this act. Further support for this legislative intent is found in the section of the statute which describes the duties of the Michigan Corrections Commission. That section provides, in part:

"The commission shall constitute the responsible authority for the administration of the penal institutions, prison industries, parole and probation of the state, subject to the limitations hereinafter set forth. The commission shall determine *all matters* relating to the *unified development of the penal institutions,* prison industries, parole and probation of the state and shall coordinate and adjust the agencies and *penal institutions within its jurisdiction so that each shall form an integral part of a general system."* MCL 791.202; MSA 28.2272. (Emphasis supplied.)

Again, the language employed by the Legislature evidences an intent to vest full power in the commission to develop, in a unified manner, a general system of state correctional institutions over which the department has exclusive jurisdiction.

As noted above, the zoning enabling act does not indicate whether or not the Legislature intended to subject the department to local zoning ordinances. We can find no expression of a legislative intent in the language of that act to subject the department's exclusive jurisdiction over the state's penal institutions, and its duty to coordinate and adjust those institutions as an integral part of a unified, general correctional system, to the many

and varied municipal zoning ordinances throughout the state. If the department were subject to those ordinances, the underlying policies of the general correctional system could be effectively thwarted by community after community prohibiting the placement of certain penal institutions in appropriate locations. A careful reading of the statute establishing the department evidences a contrary legislative intent.

We hold that in enacting MCL 791.201, *et seq.;* MSA 28.2271, *et seq.,* the Legislature intended to grant the Department of Corrections immunity from local zoning ordinances when establishing state penal institutions. Consequently, defendant's zoning ordinance is void to the extent that it attempts to prohibit the use of the subject property as a rehabilitation center.

## III

We reject the city's contention that the archdiocese, as a private lessor, cannot claim immunity from defendant's zoning ordinance even if its lessee is immune, by observing that the entire statutory scheme of the zoning enabling act, MCL 125.581 *et seq.;* MSA 5.2931 *et seq.,* is concerned with regulating the use of lands and structures, not ownership.[7]

Reversed. No costs, a public question being involved.

KAVANAGH, C.J., and WILLIAMS, LEVIN, COLEMAN, FITZGERALD, and RYAN, JJ., concurred.

BLAIR MOODY, JR., J., took no part in the decision of this case.

---

[7] See, also, 8 McQuillin, Municipal Corporations (3d ed, 1976), § 25.17, p 43:

"[Z]oning ordinances are concerned with the use of property and not with ownership thereof nor with the purposes of the owners or occupants."