Markman, J.
(dissenting). I respectfully dissent. A majority of the Court affirms in part the judgment of the Court of Appeals, concluding that MCL 380.1263(3) evidences a legislative intent to immunize school districts from local zoning ordinances that affect the content of school site plans. I disagree with the majority’s conclusion that the language in this statute according the state superintendent of public instruction (superintendent) “sole and exclusive jurisdiction” to review and approve “site plans” for school buildings permits the superintendent to determine what may be placed on a site without regard to local zoning ordinances. Because, in my judgment, there is no clear legislative intent in MCL 380.1263(3) to exempt school districts from local zoning ordinances, I would reverse the judgment of the Court of Appeals.
I. THE DEARDEN TEST AND RELEVANT CASES
As this Court indicated in Dearden v Detroit, 403 Mich 257, 264; 269 NW2d 139 (1978), “legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances.” In Dear-den, this Court considered a statute granting the *305 Department of Corrections “exclusive jurisdiction” over penal institutions, MCL 791.204, and determined that the statutory scheme demonstrated a legislative intent to grant the department immunity from local zoning ordinances in the establishment of state penal institutions. Dearden, supra at 265-267.
Subsequently, in Burt Twp v Dep’t of Natural Resources, 459 Mich 659; 593 NW2d 534 (1999), this Court concluded that the Department of Natural Resources was required to comply with a local zoning ordinance when constructing a public boat launch. Although the Legislature granted the department “power and jurisdiction over the management, control, and disposition of all land under the public domain, except for those lands . . . that are managed by other state agencies,” MCL 324.503(1), other statutes granted the township extensive regulatory authority over land use, including waterfront land use. We noted that the burden was on the department to demonstrate a “clear legislative intent” to exempt the department from the township’s zoning ordinances. Nothing in the statutes in that case indicated a “clear expression” of legislative intent to grant the department exclusive jurisdiction or to exempt the department from the township’s zoning ordinance. Burt Twp, supra at 668.
More recently, in Byrne v Michigan, 463 Mich 652, 660-661; 624 NW2d 906 (2001), this Court concluded that the Legislature clearly expressed its intent to grant the Michigan State Police exclusive authority, not subject to any local zoning ordinances, over the siting and construction of a communications tower. The statute at issue there, MCL 28.282(2), specifically required that the local zoning authority be notified of *306 the site selected and set out a procedure to be followed in the event that the selected site failed to comply with local zoning, with the result that if any dispute could not be resolved, the department could proceed with construction.[1] Thus, the statute amounted to a “clear expression” of the Legislature’s intent to invest the state police with full authority over the construction of the tower. Id. at 661.
II. ANALYSIS
For the following reasons, which will be discussed in more detail below, I do not believe that MCL 380.1263(3) evidences a legislative intent, much less a “clear” legislative intent, Burt, supra at 666, to equate the state superintendent’s authority over school site plans with the general power to act as a statewide zoning official. First, authority over site plans is wholly distinct from authority over zoning and land-use matters. Second, MCL 380.1263(3) fails to reference zoning, an inexplicable failure if the purpose of this provision was to confer zoning authority upon a public official. Third, the Township Zoning Act, MCL 125.321 et seq., sets forth a contrary understanding of *307 the zoning and land-use authority of local officials. As a result, under the test set out in Dearden, in which this Court declined to adopt a rule that state agencies have inherent immunity from local zoning ordinances, there is no evidence of a “clear legislative intent,” Burt, supra at 666, to provide the superintendent with zoning authority and thereby immunize school districts from township zoning ordinances.
A. SITE PLAN AUTHORITY DISTINCT FROM ZONING AUTHORITY
Determining whether the Legislature intended to exempt local school districts from township zoning affecting site plans for schools requires an examination of the relevant portion of the Revised School Code, MCL 380.1263(3), which provides:
The board of a school district shall not design or build a school building to be used for instructional or noninstructionai school purposes or design and implement the design for a school site unless the design or construction is in compliance with [MCL 388.851 to 388.855a, the construction of school buildings act]. The superintendent of public instruction has sole and exclusive jurisdiction over the review and approval of plans and specifications for the construction, reconstruction, or remodeling of school buildings used for instructional or noninstructional school purposes and of site plans for those school buildings.
As the lead opinion recognizes, this provision requires local school boards to comply with the construction of school buildings act and grants the state superintendent “sole and exclusive jurisdiction” to review and approve “plans and specifications for the construction, reconstruction, or remodeling of school buildings” and “site plans for those school buildings.”
*308 I agree with the lead opinion that the references in MCL 380.1263(3) to both construction plans and site plans indicate that the Legislature viewed site plans as meaning something different from construction plans. Like the lead opinion, I believe that a site plan essentially comprises “the plan for everything on the property.” Ante at 292. As the lead opinion acknowledges, a site plan reflects “what is to be undertaken on the site,” ante at 293, and amounts to a proposal. This is supported by the description of site plans given in MCL 125.286e(1):
As used in this section, “site plan” includes the documents and drawings required by the zoning ordinance to insure that a proposed land use or activity is in compliance with local ordinances and state and federal statutes. [Emphasis added.[2]]
Site plans thus can be reasonably understood as consisting of written and illustrative documents that set forth the proposed layout of a site and that are used to ensure compliance with local zoning regulations.
Although I do not disagree with the lead opinion’s general characterization of site plans, I disagree with its conclusion that the superintendent’s authority over site plans is “unaffected by any zoning or planning rules or ordinances regarding what goes on within the site itself.” Ante at 293. As the lead opinion recognizes, a “plan” is a proposal that is tentative in nature and is not, by definition, a final decision. Ante at 292. *309 Recognizing this meaning, it is clear, in my judgment, that the authority granted to the superintendent in MCL 380.1263(3) relates only to the approval of proposals for what might be built, or what the school district would like to have built, on the school site, and is not the equivalent of authority to undertake final zoning or land-use decisions. The lead opinion, however, construes MCL 380.1263(3), as empowering the superintendent to effect final zoning and land-use decisions regarding the placement of buildings and facilities on school sites. In contrast, I believe that the superintendent’s authority extends under the statute only to the final review and approval of the proposed layout—that is the “site plan”—for the school building. The statute authorizes the superintendent to finally review and approve the plan for the school site. However, local authorities, consistently with MCL 125.286e(1), are authorized to utilize the site plan as a means for ensuring that the proposed land use by the superintendent complies with local zoning ordinances.[3]
The superintendent’s authority over site plans is not the equivalent of zoning or land-use authority, but it is an authority in support of, an authority that informs, the exercise of zoning authority by local officials. A site plan is a tool that ensures compliance *310 with zoning; it is not merely substitute nomenclature for describing the zoning and land-use processes.[4]
B. ABSENCE OF REFERENCE TO ZONING
It is noteworthy that MCL 380.1263(3) is not a zoning or land-use statute at all and nowhere does it refer to zoning or land-use authority. Rather, this provision is located within Part 16 of the Revised School Code, which concerns the general powers and duties of boards of education. As discussed in the preceding subsection, the statute grants the superintendent sole and exclusive jurisdiction to review and approve site plans for school buildings, but nowhere empowers the superintendent to make final zoning or land-use decisions, even as they relate to school site plans. This omission is particularly significant in light of the level of specificity with which the provision otherwise describes the superintendent’s jurisdiction. Under MCL 380.1263(3), the superintendent possesses jurisdiction over “plans” and “specifications” for the “construction,” the “reconstruction,” and the “remodeling” of schools, as well as for the “site plans,” of certain school buildings. However, nowhere in this provision is there any mention of jurisdiction concerning zoning or land-use planning, both of which are subject to regulation under entirely separate statutes. This is hardly surprising, considering that subsection 1263(3) *311 is part of a school code and not a part of a zoning or land-use statute.[5]
Despite the lack of any statutory reference to zoning or land-use authority, the lead opinion construes subsection 1263(3) as replacing the authority of local officials in this realm with that of the superintendent. It reaches this conclusion with little substantive analysis, instead simply assuming that the Legislature, by granting the superintendent certain enumerated powers, intended to grant him unenumerated powers as well.[6] Yet, in my judgment, it is difficult to conceive that the Legislature would have conferred zoning and land-use authority upon the superintendent by implication, and that it would have set forth with specificity an enumeration of lesser authorities and yet intended to grant a greater authority despite failing to specify that greater authority. Further, it is difficult to conceive that the Legislature would have intended to deprive communities throughout the state of one of their most fundamental powers, the power to zone and regulate land use, through such indirection.[7] In *312 the absence of any indication in MCL 380.1263(3), clear or otherwise, that the superintendent is not required to comply with local zoning and land-use regulations, I believe that such compliance is required. There is nothing in that statute that authorizes the superintendent to act in disregard of the zoning and land-use decisions made by local communities throughout this state.
C. TOWNSHIP ZONING ACT
The lead opinion’s interpretation of MCL 380.1263(3) is further refuted by the Township Zoning Act, pursuant to which township boards are authorized to regulate in a very broad manner land uses and development within their boundaries, including regulation of the location and size of buildings.[8] Moreover, *313 MCL 125.271 specifically allows townships “to facilitate adequate and efficient provision for . . . education . . . .” Similarly, MCL 125.273 provides:
The zoning ordinance shall be based upon a plan designed to . . . facilitate adequate provision for a system of transportation, sewage disposal, safe and adequate water supply, education, recreation, and other public requirements ....
These provisions generally recognize the zoning and land-use authority of townships, as well as the specific role of zoning and land-use authority in promoting a system of education. Because the Legislature has authorized township boards to comprehensively regulate land use, and has specifically authorized townships to enact zoning ordinances in order to provide for the area’s education requirements, I do not believe that the superintendent’s authority under MCL 380.1263(3) can reasonably be construed to displace all local zoning and land-use ordinances that, in any way, “affect” school site plans. The breadth of the Township Zoning Act is inconsistent with the notion that the Legislature would have compromised this authority through statutory silence and indirection.
Given the integrated and coordinated nature of most zoning and land-use plans, in which the whole is affected by the part, the conferral of authority upon the superintendent to disregard local regulations con *314 ceming school sites carries with it a potential effect reaching far beyond these sites. In communities throughout the state, the most carefully considered and finely coordinated zoning and land-use plan will now potentially be subject to the disruptiveness of a contrary zoning or land-use decision made by the superintendent. Moreover, such a decision will be one undertaken by an unelected official who, almost certainly, will possess less familiarity with the needs and circumstances of these communities, and who will be less responsive to the people of these communities, than their own local officials.
III. APPLICATION OF THE DEARDEN TEST
In Dearden, supra at 265, the statute at issue granted the Department of Corrections “exclusive jurisdiction” over penal institutions. The statute indicated that it was intended to repeal other provisions of law that were inconsistent with the department’s administration of the penal system and indicated that the Michigan Corrections Commission was to address “ ‘all matters relating to the unified development of the penal institutions ... of the state ....’” Id. at 266 quoting MCL 791.202(1). The statute thus evidenced a legislative intent to immunize the department “from local zoning ordinances when establishing state penal institutions.” Id. at 267.
In my judgment, the circumstances involved in Dearden materially differ from the circumstances in this case. Although, like the statute in Dearden, subsection 1263(3) contains “exclusive jurisdiction” language, the exclusive jurisdiction applies specifically to “the review and approval of plans and specifications for the construction, reconstruction, or remodel *315 ing of school buildings” and “site plans for those school buildings.” This language, in my view, reflects an intent to grant the state superintendent a more limited authority that relates specifically to the oversight of construction and site plans for particular school buildings. Whereas the statutory scheme in Dearden reflected a legislative intent to provide the Department of Corrections with broad authority to oversee and develop a statewide system of penal institutions, the relevant statute here reflects an intent to empower the superintendent to oversee a much narrower area relating to construction and site plans for school buildings. This is not surprising in view of the fact that principal authority over schools, unlike prisons, has traditionally reposed with local communities.[9]
In regard to the application of the Dearden test, this Court indicated in Burt Twp, supra at 666, that the party claiming to be exempt must show “a clear legislative intent” to exempt the particular activities from local zoning. The lead opinion effectively inverts this test, asserting that the statutes pertaining to township zoning and planning do not expressly require school districts to comply with local zoning regulations. Ante at 295. However, given the broad land-use authority that the Legislature has granted to townships, it would hardly be expected that these statutes would also affirmatively enumerate those *316 entities obligated to comply with their zoning requirements. To assume otherwise is to suggest that, unless express compliance is mandated, then compliance is not required. Following this reasoning to its logical conclusion, one would have to assume that no entity must comply with local zoning authority because no such entities are listed. The lead opinion’s analysis improperly shifts the burden to the township to demonstrate that its generally applicable zoning and land-use regulations are applicable to a particular entity.
In my judgment, the school district, the party claiming exemption, has not met its burden. Rather, the relevant statutory provisions do not evidence a “clear legislative intent” to immunize local school districts from local zoning ordinances.
IV. CONSEQUENCES OF THE MAJORITY HOLDING
The majority of the justices conclude that the superintendent’s authority over “what goes on within the site itself” is unaffected by local zoning, ante at 293, and that local school districts are immune from township zoning ordinances “as they affect the content of the site plan itself.” Ante at 295. However, the lead opinion does not otherwise explain how broad or how limited it perceives the superintendent’s jurisdiction to be. This prompts the obvious questions: precisely what, under the lead opinion, does the superintendent have the authority to do; and precisely what do local officials have the authority to do? By not offering insight into how these questions should be answered, the public is left only to speculate, ensuring that new litigation will be the product. Which types of zoning and land-use matters “affect”
*317 the content of the site plan itself?[10] Do sewage and drainage pipes that extend beyond the “site itself” and into the surrounding community “affect” the site plan? Do roads and paths, and means of ingress and egress that extend beyond the “site itself” and into the surrounding community “affect” the site plan? Do environmental regulations that affect the community generally “affect” the site plan? Do noise regulations that have a general effect on the community “affect” the site plan? Indeed, what generally applicable zoning and land-use regulations might not be perceived, at least under some circumstances, as “affecting” the site plan?[11]
Apart from what “affects” the site plan, and is thereby within the exclusive determination of the superintendent, what “affects” the community surrounding the school is also within the exclusive determination of the superintendent. Persons living within the surrounding neighborhood, and within the surrounding community, will, as a result, have dimin *318 ished effective resort to their local representatives, none of whom will any longer possess authority over matters relating to school sites and the structures upon them.
V. CONCLUSION
Contrary to the majority, I do not believe that MCL 380.1263(3), which grants the state superintendent “sole and exclusive jurisdiction over the review and approval of plans and specifications for the construction, reconstruction, or remodeling of school buildings . . . and of site plans for those school buildings,” indicates a “clear legislative intent” to exempt the state school superintendent from local zoning ordinances. First, the superintendent’s authority over “site plans” is not the equivalent of zoning or land-use authority, and such authority cannot reasonably be understood to displace local zoning and land-use authority. Second, subsection 1263(3) does not even refer to zoning. Its specific grants of authority to the superintendent cannot reasonably be construed to include the distinct, and greater, authority over zoning and land-use matters. Third, the relevant provisions of the Township Zoning Act confer upon townships broad land-use authority and specifically recognize the role of such authority in providing for a system of education. Such breadth of authority is inconsistent with the notion that the Legislature would have compromised this authority through statutory silence and indirection.
1 would therefore reverse the part of the judgment of the Court of Appeals finding such an exemption for the superintendent’s decisions, and remand for entry *319 of summary disposition on this issue in favor of the intervenors.[12]

 MCL 28.282(2) provides:
In siting the buildings and equipment necessary to implement the Michigan public safety communications system, the director of the department of state police shall locate the system, a local unit of government with zoning authority shall be notified of a site selected in their jurisdiction and the requirements necessary for a site. If the selected site does not comply with zoning, the local unit shall have 30 days from the date of notification to grant a special use permit or propose an equivalent site. If the local unit does not grant a special use permit within the 30 day period, or a proposed alternate site does not meet the siting requirements, the department may proceed with construction.

 See also the township planning act, MCL 125.326(4):
After adoption of a plan under this section, a site plan for a property located in the plan area that is required to be submitted under section 16e of the township zoning act [MCL 125.286e] shall comply with the plan adopted under this act.

 To illustrate this point, consider the situation of an individual planning to build a new house. Although the individual might have “sole and exclusive” authority to review and approve a site plan for the house, as between the individual and the builder and neighbors, this does not mean that the site plan is exempt from applicable local zoning ordinances. Local zoning authorities are still empowered to examine the site plan in order to ensure that the proposed use complies with local zoning requirements.

 The lead opinion’s apparent belief that I view the township’s authority under MCL 380.1263(3), as either concurrent with or superior to the superintendent’s authority, ante at 296-297, misapprehends this dissent. Rather, the respective authorities of these entities are simply different. That the President, for example, may veto legislation enacted by the Congress does not make his veto authority either “concurrent” with or “superior” to Congress’ legislative authority. It is simply a different authority whose exercise may have an effect on the authority of the Congress.

 Given its placement in Michigan statutory law, it is quite likely that the legislative intention underlying MCL 380.1263(3) was merely to recognize the superintendent as the final authority within the school system empowered to review and approve construction plans and site plans for school buildings.

 This is reflected in part by the lead opinion’s apparent conclusion that the state superintendent may preempt some local zoning and land-use regulations, but not others. Absent any reference to zoning or land-use authority in the statute, it is hard to understand how the lead opinion draws a distinction between zoning that is preempted and zoning that is not preempted.

 The Legislature has hardly shown itself incapable of, or disinclined to, expressly use “zoning” when that was its intention. A simple word check of tire Michigan statutory law indicates that the Legislature has used the term on at least several hundred occasions when it wished to reference such authority. Yet, in the view of the lead opinion, the Legislature, through MCL 380.1263(3), conferred authority over zoning upon an *312 unelected state official, in derogation of the authority possessed by the people of communities throughout the state, in a realm (i.e., schooling) that likely would affect every one of these communities, without happening to mention “zoning.”

 With regard to land-use regulation by townships, MCL 125.271(1) states:
The township board of an organized township in this state may provide by zoning ordinance for the regulation of land development and the establishment of districts . . . which regulate the use of land and structures; to meet the needs of the state’s citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land; to insure that use of the land shall be situated in appropriate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities; to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements; and to promote public health, safety, and welfare .... The township board of an organized township may use this act to provide by ordinance for the regulation of land development.... Ordinances regulating land development may also be adopted designating or limiting the location, the height, number of stories, and size of *313 dwellings, buildings, and structures that may be erected or altered ..., and the specific uses for which dwellings, buildings, and structures . . ., may be erected or altered; the area of yards, courts, and other open spaces, and the sanitary, safety, and protective measures that shall be required for the dwellings, buildings, and structures ....

 Compare, also, the specificity and concreteness of MCL 46.11, considered in Pittsfield Charter Twp v Washtenaw Co, 468 Mich 702; 664 NW2d 193 (2003), which states that a county board of commissioners may “[d]etermine the site of, remove, or designate a new site for a county building,” MCL 46.11(b), and “[e]reot the necessary buildings for jails, clerks’ offices, and other county buildings, and prescribe the time and manner of erecting them,” MCL 46.11(d) (emphasis supplied).

 Some sense of the breadth of the answer to this question might be gleaned by reading the United States Supreme Court’s decision in Wickard v Filburn, 317 US 111; 63 S Ct 82 87 L Ed 122 (1942), and its considerable line of progeny, concerning what is meant by matters that “affect” interstate commerce.

 The lead opinion is tentative even in addressing whether a community may determine the initial location of a school, for example, by restricting it from being placed in a recreationally, residentiary, or commercially zoned area. The lead opinion, while indicating that school districts are exempt from zoning ordinances that “affect the content of a school site plan,” ante at 298, does not clearly address the question of who has the power to determine the location of the school site in the first instance, and whether a community has any involvement in this decision. Although the lead opinion appears at one point to limit the superintendent’s exemption to “the site plan itself,” ante at 295, it proceeds to suggest that the superintendent possesses exclusive authority “over design, construction, and siting requirements,” ante at 295 (emphasis added). Moreover, it is difficult to understand what could more directly “affect” a school site plan than where a school is sited in the first place.

 I concur in part iv of the lead opinion, in which the justices decline to address intervenors’ argument regarding the improper delegation of authority.