686 N.W.2d 514 (2004)
262 Mich.App. 542
CITY OF DETROIT, City of Huntington Woods, Inter-County Citizens Achieving Regional Excellence, Green Acres-Woodward Civic Association, Palmer Woods Association, University District Community Association, Sherwood Forest Association, Suzanne Antisdel, Arthur Antisdel, Charles Barr, Carolyn Barr, Martin Baum, Marcia Baum, Willie Bell, Carol Bell, Eddy S. Bullock, Jr., Anna Bullock, Curtis Dickerson, Maria Dickerson, Michael Einheuser, Diane L. Willard, Marie Glaza, Nancy Goedert, Robert Handley, Marie Handley, Dawn Hesse, Donen Hesse, Melvin J. Hollowell, M.D., Sylvia Hollowell, Khalid Kassab, Clair Kassab, Reverend Michael Kirila, Lauretta E. Laframboise, David Marquardt, Margaret R. Marquardt, Dale Morgan, Thomas J. Rafels, Herbert Schneider, Kathryn Schneider, Gary Scott, Laura Scott, Normal Silk, Charles A. Vasser, David Welsch, Theresa Welsch, and Machpelah Cemetery Association, Plaintiffs-Appellees, and
City of Ferndale and City of Pleasant Ridge, Plaintiffs-Not-Participating,
v.
STATE of Michigan, Defendant-Appellant, and
State Fair Development Group, L.L.C., Defendant-Not-Participating.
Docket No. 240174.
Court of Appeals of Michigan.
Submitted April 7, 2004, at Detroit.
Decided June 22, 2004, at 9:00 a.m.
Released for Publication September 1, 2004.
*516 Barris, Sott, Denn & Driker, P.L.L.C. (by Eugene Driker and Geaneen Washington), Detroit, for the plaintiffs.
Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, and Matthew C. Keck and John F. Szczubelek, Assistant Attorneys General, for the state of Michigan.
Before: WILDER, P.J. and HOEKSTRA and KIRSTEN FRANK KELLY, JJ.
PER CURIAM.
Defendant state of Michigan appeals as of right[1] a consent judgment arising out of plaintiffs' claim for declaratory and injunctive relief to prevent construction of an auto racing facility and outdoor amphitheater on the state fairgrounds. We reverse.

I. Facts
The state owns a parcel of land[2] in the city of Detroit near the intersection of Woodward Avenue and Eight Mile Road, commonly referred to as the "state fairgrounds," on which it holds the annual Michigan State Fair. During the rest of the year, indoor and outdoor agricultural, industrial, commercial, and recreational pursuits are conducted at the fairgrounds. Adjacent to the state fairgrounds is a parcel of land of approximately thirty-six acres,[3] which the state has also acquired. Plaintiffs allege that the state fairgrounds is zoned for general business use while the adjoining parcel is primarily restricted to two-family residential use with the lots facing Woodward Avenue and Eight Mile Road zoned for general business use.
In April 2000, the state agreed to sell the adjoining parcel to State Fair Development Group, L.L.C. (SFDG). The agreement provides: "When title passes to the Buyer at closing, the Premises will immediately become subject to ... certain local ordinances and regulations (including zoning and taxation) to which the Premises was not subject to [sic] before closing because it was owned by the State." The state also agreed to lease the state fairgrounds to SFDG for thirty years with renewal options. The lease terms include a provision to develop the state fairgrounds and the adjoining parcel in accordance with a "master plan" attached to the lease. According to the plan, components of the state fairgrounds will include an auto racing facility and a large open-air amphitheater. The plan also provides for various other indoor and outdoor structures to be built, including, but not limited to, a convention center, an equestrian center, a livestock barn, and a community arts center. The plan also provides for the demolition or conversion of several existing structures. The lease further provides *517 that the SFDG must comply with all applicable laws, including zoning ordinances.
In May 2000, the Detroit City Council unanimously adopted a resolution opposing construction of the racetrack because of anticipated nuisance. Plaintiffs subsequently filed the complaint in this case seeking (1) injunctive relief preventing the SFDG from using the state fairgrounds or the adjoining parcel in violation of Detroit's zoning ordinance and (2) a declaratory judgment that the racetrack and amphitheater would be a nuisance, a nuisance per se, and a violation of the Michigan environmental protection act, M.C.L. § 324.1701 et seq. Plaintiffs later filed an amended complaint adding the state as a defendant.
The state moved for summary disposition under MCR 2.116(C)(7) and (C)(8) arguing, among other things, that it is exempt from the city zoning ordinance because the Michigan Exposition and Fairgrounds Act (MEFA), M.C.L. § 285.161 et seq., granted the Michigan Department of Agriculture (MDA) exclusive control over the state fairgrounds, M.C.L. § 285.165. The trial court denied the state's motion, ruling that, in the context of its contract with the SFDG, the state must comply with the zoning ordinance. The parties stipulated dismissal of the claims that were not addressed in the motion. This appeal followed.

II. Jurisdiction
The parties' stipulation to dismiss the remaining claims without prejudice is not a final order that may be appealed as of right; it does not resolve the merits of the remaining claims and, as such, those claims are "not barred from being resurrected on that docket at some future date." Wickings v. Arctic Enterprises, Inc., 244 Mich.App. 125, 136, 624 N.W.2d 197 (2000). The parties' stipulation to dismiss the remaining claims was clearly designed to circumvent trial procedures and court rules and obtain appellate review of one of the trial court's initial determinations without precluding further substantive proceedings on the remaining claims. This method of appealing trial court decisions piecemeal is exactly what our Supreme Court attempted to eliminate through the "final judgment" rule. MCR 7.202(6)(a)(i); McCarthy & Associates, Inc. v. Washburn, 194 Mich.App. 676, 680, 488 N.W.2d 785 (1992).
Accordingly, this Court does not have jurisdiction over this appeal as an appeal as of right because the trial court has not entered a final order disposing of all plaintiffs' claims. And we caution practitioners and trial courts to refrain from this type of improper practice, which we do not wish to reward. But, because this appeal presents a matter of significant public interest and in the interest of judicial economy, we exercise our discretion to treat the state's appeal as on leave granted. Schultz v. Auto-Owners Ins. Co., 212 Mich.App. 199, 200 n. 1, 536 N.W.2d 784 (1995).

III. Applicability of Zoning Ordinance
The state contends that the trial court erred in ruling that the state is subject to the city's zoning ordinance. We agree that the trial court erred in this ruling. Statutory interpretation presents a question of law that we review de novo. Putkamer v. Transamerica Ins. Corp. of America, 454 Mich. 626, 631, 563 N.W.2d 683 (1997).
The MEFA vests control over the state fairgrounds in the MDA; M.C.L. § 285.165 provides:
The control of all land and other property held or acquired by the state or its people for the purpose of holding and conducting agricultural and industrial *518 fairs and exhibitions is vested in the [MDA].
The MEFA sets forth the MDA's powers and duties in M.C.L. § 285.166, which provides:
The [MDA] shall do all of the following:
(a) Conduct an annual state fair and other exhibits or events for the purpose of promoting all phases of the economy of this state. This fair and the exhibits or events shall encourage and demonstrate agricultural, industrial, commercial, and recreational pursuits.
(b) Lease the state exposition and fairgrounds, a portion of the state exposition and fairgrounds, or a building on the state exposition and fairgrounds for purposes considered by the department to be consistent with the staging of the state fair and other exhibits or events. The department may determine and impose rental charges and other fees for the use or lease of the buildings and grounds or a portion of the buildings and grounds. The department may lease properties to private and public organizations for a period not to exceed 30 years for consideration established by the department. The department may grant leases for all or a portion of the state exposition and fairgrounds to private and public organizations, conditional upon construction and improvements according to plans approved by the department to be financed by the lessees, for terms not to exceed 30 years. The department may grant an extension of the lease term for not more than an additional 20 years. The use of the state exposition and fairgrounds, a portion of the state exposition and fairgrounds, or a building on the state exposition and fairgrounds shall not interfere with the preparation for or holding of the state fair and other exhibits or events. Land, a building, or other property that is leased under this subdivision to a for-profit business shall be leased at fair market value. All leases and contracts entered into under this act remain valid until the expiration of the term of the lease or contract.
(c) Enter into contracts to conduct the annual state fair, exhibits, or other events, at the state exposition and fairgrounds that enhance agricultural, industrial, commercial, recreational, educational, or cultural pursuits or government services to citizens.
In addition, the title to the MEFA states that the act was created "to provide for the control and management of certain state exposition centers and fairgrounds...."[4]
Our Supreme Court has held that "the legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances." Dearden v. Detroit, 403 Mich. 257, 264, 269 N.W.2d 139 (1978). The Court later explained that "there are no special words, the absence of which engenders a specific outcome." Pittsfield Charter Twp. v. Washtenaw Co., 468 Mich. 702, 710, 664 N.W.2d 193 (2003). "Whatever terms are actually employed by the Legislature, our task is to examine the various statutory provisions at issue and attempt to discern the legislative intent in enacting them." Burt Twp. v. Dep't of Natural Resources, 459 Mich. 659, 669, 593 N.W.2d 534 (1999).
With this in mind, we must then resolve the conflict between the state's authority, as granted to the MDA pursuant to the MEFA, to construct and operate *519 a racing facility and outdoor amphitheater on the state fairgrounds and the city of Detroit's authority to regulate the use of lands within its territory pursuant to the City and Village Zoning Act (CVZA), M.C.L. § 125.581 et seq.
The trial court determined that a significant factor in discerning the Legislature's intent is the importance of uniformity across the state. The trial court stated that when uniformity is not necessary, however, local zoning ordinances must be followed. The trial court concluded that there was no need for statewide uniformity in the construction of the proposed structures; therefore, the state, in the context of its contract with the SFDG, must comply with the city's zoning ordinance.
We agree that the need for uniformity across statewide systems is an important consideration because if the state were subject to all local ordinances, the underlying policies of the various state systems "could be effectively thwarted by community after community" prohibiting the placement of necessary structures in appropriate locations. See Dearden, supra at 267, 269 N.W.2d 139. In this case, however, the Legislature created a distinct statutory scheme to regulate a specific parcel of land. Thus, statewide uniformity is not a relevant consideration. The more accurate question is whether, in creating the MEFA, the Legislature intended to grant the MDA exclusive control over this land to the extent that it is exempt from local zoning ordinances. See Capital Region Airport Auth. v. DeWitt Charter Twp., 236 Mich.App. 576, 583, 601 N.W.2d 141 (1999).
The state argues that we should presume the state is immune from local zoning because the CVZA does not expressly authorize the application of zoning to state-owned land and the MEFA contains no language subjecting the state fairgrounds to local zoning. But our Supreme Court guides us to characterize the issue "as one, not of absolute governmental immunity, but rather of legislative intent." Dearden, supra at 265, 269 N.W.2d 139; see Burt Twp., supra at 666 n. 8, 593 N.W.2d 534. Further, it is not necessary for the MEFA to expressly mandate compliance or permit noncompliance with local zoning ordinances. See Burt Twp., supra at 669, 593 N.W.2d 534; Pittsfield Twp., supra at 710, 664 N.W.2d 193.
Looking first to the CVZA, our Supreme Court has already decided the act does not "disclose what effect, if any, a zoning ordinance should have on state agencies." Dearden, supra at 265, 269 N.W.2d 139. Despite this, plaintiffs suggest that we grant the same deference to the CVZA that was granted to the township's broad regulatory authority in Burt Twp., supra at 665-666, 593 N.W.2d 534. But we do not agree that a generalized authority regarding "recreation" creates the same level of intended control over city land as was found in Burt Twp. regarding control over waterfront developments. See Pittsfield Twp., supra at 714-715, 664 N.W.2d 193.
Turning to the MEFA, the act states that "control of all land ... held or acquired by the state ... for the purpose of holding and conducting agricultural and industrial fairs and exhibitions is vested in the [MDA]." M.C.L. § 285.165. The plain language of the MEFA indicates the Legislature's intent that jurisdiction over the state fairgrounds be vested exclusively in the MDA. This is further supported by the fact that leasing of the grounds is conditioned only on the MDA's approval and harmony with the annual state fair. M.C.L. § 285.166. Under the doctrine of expressio unius est exclusio alterius  the expression of one thing suggests the exclusion of all others  by turning its attention to limits on leasing of the land, the Legislature "must have considered the issue of limits and intended no other limitation." *520 Pittsfield Twp., supra at 711, 712, 664 N.W.2d 193. Therefore, the Legislature's intent in creating the MEFA was to grant the MDA exclusive control  exempt from local zoning ordinances  over the state fairgrounds and any other property acquired for the purpose of holding and conducting state fair exhibitions.[5]

IV. Authority to Grant Declaratory Relief
The state also argues that the trial court did not have authority to enter declaratory relief regarding the applicability of local zoning because plans for the structures had not yet even been finalized; thus, plaintiffs' complaint is based on hypothetical issues, and there is no actual case or controversy. We disagree. This Court reviews jurisdictional issues de novo. Tokar v. Albery, 258 Mich.App. 350, 352, 671 N.W.2d 139 (2003).
"The existence of an `actual controversy' is a condition precedent to invocation of declaratory relief" and this requirement "prevents a court from deciding hypothetical issues." Shavers v. Attorney General, 402 Mich. 554, 588-589, 267 N.W.2d 72 (1978). But declaratory relief is designed to give litigants access to courts to preliminarily determine their rights. Id. at 588, 267 N.W.2d 72; MCR 2.605(A)(1). An actual controversy may exist where declaratory relief is needed to guide a plaintiff's future conduct, and the "court is not precluded from reaching issues before actual injuries or losses have occurred." Shavers, supra at 589, 267 N.W.2d 72.
Although construction had not yet begun when plaintiffs filed their complaint, the issues it presents are not hypothetical; according to the lease, the SFDG is required to construct the racetrack and amphitheater. Moreover, declaratory relief is designed to resolve questions like the one at issue before the parties change their positions or expend money futilely. See Opal Lake Ass'n v. Michaywe Ltd. Partnership, 47 Mich.App. 354, 209 N.W.2d 478 (1973). Plaintiffs' request for declaratory relief does not rely on the state having already violated the zoning ordinance, rather, it properly requests a determination whether the state has the authority to proceed as planned. The fact that the construction at issue has not yet begun does not prevent the trial court from ruling on the applicability of local zoning ordinances to the state.
Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] See part II.
[2] Plaintiffs allege that the parcel consists of 167 acres, while the state alleges that the parcel consists of "approximately 190 acres."
[3] Plaintiffs allege that the adjoining parcel consists of forty acres, while the state alleges that it consists of thirty-six acres.
[4] The title is useful for interpreting an act's subject, purpose, and scope, but is not controlling authority. Malcolm v. East Detroit, 437 Mich. 132, 143, 468 N.W.2d 479 (1991); People v. Al-Saiegh, 244 Mich.App. 391, 396-397, 625 N.W.2d 419 (2001).
[5] We add the caveat, however, that this conclusion only applies to the state fairgrounds and the adjoining parcel while still under the ownership of the state. If the adjoining parcel is sold to the SFDG, or any other entity, rather than merely leased, the change in ownership will trigger the need for compliance with local zoning ordinance. See Nolan Bros. of Texas, Inc. v. Royal Oak, 219 Mich.App. 611, 615-617, 557 N.W.2d 925 (1996).